Phillip E. LEOPOLD and Eddie Joe ECHOLS *v.* STATE of Arkansas

CA CR 84-215                                            692 S.W.2d 780

Court of Appeals of Arkansas
Division II
Opinion delivered July 3, 1985

*Tapp Law Offices*, by: *J. Sky Tapp*, for appellant Leopold.

*Hurst Law Offices*, by: *Q. Byrum Hurst, Jr.*, for appellant Echols.

*Steve Clark*, Att'y Gen., by: *Jack Gillean*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Judge. Appellants, Phillip E. Leopold and Eddie Joe Echols, were charged by felony information with possession of a controlled substance with intent to manufacture and deliver. Appellants were found guilty as charged by a Clark County Circuit jury and sentenced to four years in the Arkansas Department of Correction and fined $12,500. We reverse and remand.

We must agree with appellants' contention that the trial court erred in denying their motion to suppress. Appellants argued to the trial court and now on appeal that the stop and subsequent search of their vehicle by deputy sheriffs was unreasonable and that the evidence seized should have been suppressed. Prior to their trial, appellants filed a motion to suppress all the evidence seized pursuant to the search of their truck. A hearing was held on appellants' motion which motion was denied by the trial court on a finding that there was cause to stop the vehicle. The trial court relied upon *Terry* v. *Ohio*, 392 U.S. 1 (1968), and *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982), in its decision.

Officer Mitch Pierce, a deputy sheriff with the Clark County Sheriff's Office, testified at the suppression hearing that while he and his partner were returning from investigating another matter at approximately 2:00 a.m., they spotted appellants' truck traveling on a gravel road owned by International Paper but open to the public. It was a remote area approximately four to six miles off the main highway and the officer estimated that appellants' truck was traveling at about ten miles an hour. The officers suspected that it could possibly be someone headlighting or spotlighting deer.

After the officers stopped appellants' truck, the driver, appellant Phillip E. Leopold, was unable to produce a driver's license and when asked by the officers why he was in the area, appellant Leopold stated that "they were just out riding around killing time." Officer Pierce then went around to the passenger's side of the truck and asked the passenger, appellant Eddie Joe

Echols, for identification. Appellant Echols handed the officer his driver's license. The officer stated that he had noticed earlier that appellant Echols was wearing leather chaps which aroused his suspicion. The passengers were again asked what they were doing out in that area to which they said they were just out killing time. The officer asked appellants to get out of the truck and the officers detained them at the front of the truck. Officer Pierce then looked inside the passenger compartment of the truck for a weapon. Using his flashlight, Officer Pierce found a four-inch square plastic freezer container under the passenger seat of the truck. Inside the container the officer discovered two rolled cigarettes composed of a green leafy substance. There was also green leafy substance in the bottom of the container, rice, one plastic bag of brown tobacco, an insulin syringe, an alcohol prep pad and a small plastic sandwich bag which contained white powder. The officer continued his search and found a .357 Rutger in the glove box which was unloaded. Ammunition for the weapon was discovered behind the driver's seat. The officer then searched the back of the pickup truck and found a backpack, bags of top soil and barnyard, a hoe, a military web belt with a canteen holder and an E-tool and fishing poles. Officer Pierce opened the backpack and looked inside. He found a can which he opened. It contained a Sucrets box and seeds were discovered inside. Transplant tone and a paper pie plate which contained writing on it were also found inside the backpack.

During cross-examination, Officer Pierce testified that there had been complaints in the area of people spotlighting or night hunting, complaints of vehicles being out at all times of the night, complaints of things being stolen and that people had been growing marijuana in the area. Officer Pierce stated that they stopped appellants' truck upon a suspicion that the occupants were spotlighting for deer, combined with the above reports of trouble in the area, and the lateness of the hour.

At appellants' trial, a drug analyst with the Arkansas Crime Lab was called by the State as a witness. He testified that he had analyzed the contents of the plastic freezer container and determined that the material was marijuana seeds. He also stated that he germinated the seeds contained in the Sucrets box and found them to be marijuana.

Appellants argue in their brief that the facts of this case do not fit within any of the exceptions to the warrant requirement. Although appellants state that the only exception under which this case could conceivably fit is the "stop and frisk" exception, they contend that *Terry, supra,* is inapplicable to the facts. As noted previously, the trial court denied appellants' motion to suppress upon the finding that there was cause to stop appellants' truck, citing *Terry, supra.* The State asserts on appeal that the reasoning of *Terry, supra,* and subsequent cases does apply and that based on such reasoning, the stop was justified as an investigative stop. The State also contends that it was reasonable for the officers to suspect appellants might have a weapon in the truck and that the officers had sufficient cause to search for weapons.

The Fourth Amendment protects the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. In *Terry, supra,* and subsequent cases, the courts have held that, consistent with the Fourth Amendment, police may stop persons in the absence of probable cause under limited circumstances. Although stopping a car and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment, the governmental interest in investigating an officer's reasonable suspicion, based on specific and articulable facts, indicating the person or vehicle may be involved in criminal activity, may outweigh the Fourth Amendment interest of the driver and passengers in remaining secure from the intrusion. *See, Delaware* v. *Prouse,* 440 U.S. 648 (1979). In *United States* v. *Hensley,* 105 S.Ct. 675 (1985), the U.S. Supreme Court gave the police wider latitude in the conduct of an investigatory stop by allowing such a stop on the basis of a flyer from another police department stating that an individual was wanted for questioning regarding a past crime. Previously, a *Terry* stop was limited to occasions when the police had reasonable suspicion that an individual was involved in ongoing or imminent criminal activity. As a result of this decision, police may conduct a *Terry* stop to investigate a crime that has already been completed.

In *Terry, supra,* and *Sibron* v. *New York,* 392 U.S. 40 (1968), a companion case handed down on the same day, the United States Supreme Court dealt with the questions of "stop"

and "frisk" separately. A stop is a far lesser intrusion than a frisk, and the constitutional requirements for a stop are correspondingly less. Thus, a police officer may constitutionally stop a suspicious person although he has no justification to frisk him. Matters may then come to the officer's attention to justify a frisk. Once there is a reasonable stop under the Fourth Amendment, the governmental interest which permits the greater intrusion of the "frisk" is not "the prevention or detection of crime, but rather the protection of the officer making the stop." *Terry, supra*, at 23-24. A frisk is only justified when the officer has a reasonable suspicion that the detainee is armed. *See, Ybarra* v. *Illinois*, 444 U.S. 85 (1979). The frisk must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer." *Terry, supra*, at 29. An officer has the right to frisk a detainee's possessions under *Terry* if there is a reasonable suspicion that there is a weapon located there. A weapon may not be on the person but still present a threat if it is in easy reach.

In *Michigan* v. *Long*, 103 S. Ct. 3469 (1983), the Supreme Court considered the question of the authority of a police officer to protect himself by conducting a Terry-type search of the passenger compartment of a motor vehicle during the lawful investigatory stop of the occupant of the vehicle. In holding that the search was valid, the Court noted that roadside encounters between police and suspects were especially hazardous, and that danger could arise from the possible presence of weapons in the area surrounding a suspect. It was stated by the Court that:

> These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. (cite omitted) "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (cite omitted) If a suspect is "dangerous," he is no less dangerous simply because he is not arrested. If,

while conducting a legitimate Terry search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances. (cites omitted)

It is clear that even if the detainee has been removed from the vehicle and is under the officer's control, it is possible that he could break away from police control and retrieve a weapon from his automobile or that he will be permitted to reenter his automobile and will then have access to any weapons inside. Removing the possession from the detainee's custody does not remove the threat to the officer. It is also clear that a valid frisk is strictly limited to the purpose of locating weapons within easy reach.

In denying appellants' motion to suppress in the case at bar, the trial court also relied upon *Hill, supra.* There, police officers had stopped Hill after receiving radio dispatches regarding an armed robbery and murder which included a description of the suspect and his vehicle. The suspect was described as being armed and extremely dangerous. The officers advised Hill to step out of his car and a frisk search of his person was conducted for weapons. Meanwhile, another officer searched the immediate area of the car where Hill had been sitting. A brown paper sack containing a loaded gun and a large quantity of coins was found under the front seat on the driver's side. Hill argued on appeal that the stop and search of his vehicle was unreasonable and that the pistol seized should have been suppressed. The Arkansas Supreme Court held that the search of Hill's car was reasonable under the circumstances. It also held that the limited search for weapons was reasonable, citing A.R.Cr.P. Rule 3.4. This rule provides as follows:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officers or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary

to ensure the safety of the officer or others.

In the instant case, we cannot say the trial court erred in finding that the officers had reasonable suspicion under the totality of the circumstances to make an investigative stop of appellants' truck. The trial court's inquiry should not have ended at this point, however, and we hold that the subsequent frisk or protective search allegedly conducted for weapons violated appellants' constitutional rights under the Fourth Amendment and was, therefore, invalid.

The State argues that since the officers suspected that appellants were engaged in spotlighting for deer, it was reasonable for the officers to expect that they might have had weapons in the truck. This bald assertion, unsupported by the testimony of the officer, is insufficient to pass muster under the test espoused by the United States Supreme Court.

The test in determining whether the frisk was reasonable is an objective one. While the officer need not be absolutely certain that the individual is armed, the basis for his acts must lie in a reasonable belief that his safety or that of others is at stake. *Terry, supra*, at 27. Essentially, the question is whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger. The officer's reasonable belief that the suspect is dangerous must be based on "specific and articulable facts." *Terry, supra*, at 21.

In the case at bar, the officer testified at the suppression hearing that he asked appellants to step out for the purpose of checking the vehicle for a weapon. At appellants' trial, the officer merely stated that he asked both the subjects to get out of the vehicle and that he started looking underneath the seat. It is impossible for this Court to conclude that the above constitutes specific and articulable facts by the officer to justify a frisk or protective search of appellants' truck. Any warrantless search of a vehicle is presumptively unconstitutional. *United States* v. *Ross*, 456 U.S. 798 (1982). The burden is on the State to show legal justification for it. *United States* v. *Matlock*, 415 U.S. 164 (1974).

The record reflects that following the investigative stop of

appellants' truck, appellant Leopold, the driver of the truck, was unable to produce a driver's license. Appellants were asked why they were in the area and they replied that they were just riding around killing time. Officer Pierce observed that appellant Echols wore leather chaps. It was at this point that appellants were asked to step out and the search began.

The State failed to show legal justification for a protective search. The officer (whose testimony was the only evidence presented) failed to articulate any objective factual basis for a reasonable belief that appellants were dangerous and might gain immediate control of weapons. In fact, Officer Pierce testified that appellants were cooperative and courteous at all times. We find that the facts show that the officers were not motivated by fear nor that the officers' behavior at the time of the stop supports a finding that they believed they were in danger. Accordingly, all evidence seized as a result of the unjustified protective search is inadmissible and the trial court erred in denying appellants' motion to suppress.

Since we have held that the officers' action in searching appellants was unjustified at its inception, we need not address the second issue which *Terry, supra,* would otherwise present—whether the police officers' further examination of the closed backpack in the back of the pickup was unconstitutional in that the search was more extensive than reasonably necessary.

Reversed and remanded.

COOPER, J., agrees.

GLAZE, J., concurs.

TOM GLAZE, Judge, concurring. I concur. In *Foster* v. *State,* 278 Ark. 473, 646 S.W.2d 699 (1983), our Supreme Court upheld the stop and arrest of defendant when the policemen took no action until after they observed, in plain view, the contents of the trunk of defendant's car. Like in *Foster,* in this cause, the officers had, as required under Arkansas Rule of Criminal Procedure 3.1, a reasonable suspicion that appellants were committing, had committed, or were about to commit a felony. The officers did not, however, have reason to suspect that appellants were armed and dangerous—a circumstance that would have permitted a limited search for weapons. *See* Arkansas

Rule of Criminal Procedure 3.4. The search conducted in this cause not only lacked justification, but also far exceeded the bounds laid out in *Terry* v. *Ohio*, 392 U.S. 1 (1968), and set forth in Rule 3.4, *supra.*

Further, unlike in *Tillman* v. *State*, 275 Ark. 275, 630 S.W.2d 5 (1982), a vehicular search under Arkansas Rule of Criminal Procedure 14.1(a) was not justified in this cause, as the officers had no reasonable cause to believe that the truck contained evidence subject to seizure. There was no report connecting this truck or its occupants to any particular criminal activity. The officers were merely suspicious by virtue of the manner and location in which the truck was traveling, the time of night, and the fact that the passenger was wearing chaps.