Karriem MUHAMMAD *v.* STATE of Arkansas

CA CR 98-201                                    984 S.W.2d 822

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered December 23, 1998

[Petition for rehearing denied January 27, 1999.*]

---

* GRIFFEN and ROAF, JJ., would grant.

*Keil & Goodson,* by: *John C. Goodson,* for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

M ARGARET MEADS, Judge. Karriem Muhammad entered a conditional plea of guilty to manufacture, delivery or possession of a controlled substance (cocaine) pursuant to Rule 24.3 of the Arkansas Rules of Criminal Procedure and was sentenced to forty years in the Arkansas Department of Correction. Appellant's sole issue on appeal is that the trial court erred in denying his motion to suppress the cocaine found on his body because there was no reasonable articulable suspicion of criminal activity justifying a pat-down search of his person by the officer who stopped him for a traffic violation. We disagree and affirm.

When reviewing the trial court's denial of a motion to suppress, the appellate courts make an independent determination based on the totality of the circumstances and reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Welch v. State*, 330 Ark. 158, 955 S.W.2d 181 (1997); *Rankin v. State*, 57 Ark. App. 125, 942 S.W.2d 867 (1997). In making this determination, the evidence is viewed in the light most favorable to the State. *Thompson v. State*, 333 Ark. 92, 966 S.W.2d 901 (1998).

Arkansas State Trooper Jeffery Thomas testified for the State that on March 21, 1996, he stopped appellant for following too closely behind an eighteen-wheeler tractor-trailer rig. Thomas said that appellant was extremely nervous, his lips were trembling, and he stood very still and erect. Although he said that he was going to Little Rock to visit his father for his birthday, appellant was unable to state his father's age when asked.

In conjunction with the traffic stop, Trooper Thomas ran National Crime Information Computer (NCIC) and Interstate Identification Index (Triple I) checks on appellant, from which he learned that appellant had a criminal history of sale or possession of a dangerous drug and at least one arrest for aggravated robbery. Thomas then requested and received appellant's written consent to search the vehicle. At some point, appellant was issued a warning citation for following too closely. Contrary to the dissent's

assertion that Thomas detained appellant *after* issuing the warning citation, the record is unclear as to when the citation was actually issued, as evidenced by the following colloquy:

Q  Did you give him a warning citation?

A  Yes, I did. I issued him a written warning ticket for a violation.

Q  Did he seem to become more calm or anything at that point in time?

A  No, he didn't. Actually, I didn't see any noticeable change in the demeanor after making the statement to him that I was going to issue a warning.

While waiting for back-up to arrive, Thomas performed a pat-down search of appellant. When he got to appellant's belt line, Thomas felt a rigid object that he believed to be the corner of a firearm sticking out of appellant's waistband. Although appellant attempted to remove Thomas's hand from the object, Thomas discovered a brick of compressed material wrapped in brown duct tape protruding from appellant's groin area inside what appeared to be a lady's girdle.

On appeal, appellant does not contend that Thomas lacked authority to make the initial stop for following too closely; instead, he argues that Thomas had no authority to conduct a pat-down search of his person because there was no reasonable, articulable suspicion of criminal activity. We disagree. Thomas had the requisite reasonable suspicion necessary to detain appellant further and frisk him pursuant to Ark. R. Crim. P. 3.1 and 3.4.

Rule 3.1 of the Arkansas Rules of Criminal Procedure provides:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require

the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

■ ■ "Reasonable suspicion" is defined in Rule 2.1 of the Arkansas Rules of Criminal Procedure as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." The existence of a reasonable suspicion must be determined by an objective standard, and due weight must be given to the "specific reasonable inferences" an officer is entitled to derive from the situation in light of his experience as a police officer. *Coffman v. State*, 26 Ark. App. 45, 759 S.W.2d 573 (1988) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). In making this determination, the trial court may consider the factors listed in Ark. Code Ann. § 16-81-203 (1987). Those factors most relevant to this case include:

(1) The demeanor of the suspect;

(2) The gait and manner of the suspect;

(3) Any knowledge the officer may have of the suspect's background or character;

. . .

(5) The manner in which the suspect is dressed, including bulges in clothing, when considered in light of all the other factors;

. . .

(13) The suspect's apparent effort to conceal an article . . . .

■ ■ Although Trooper Thomas acknowledged that he did not have reasonable suspicion to search appellant's vehicle, appellant gave written consent for the search when asked to do so and does not contend on appeal that his consent was anything but voluntary. While the dissent believes otherwise, it is not necessary for an officer to have reasonable suspicion to request consent to search, *see Johnson v. State*, 27 Ark. App. 54, 766 S.W.2d 25 (1989); therefore, the request for consent was clearly within

Thomas's purview. Thomas was alone with appellant while awaiting back-up officers to assist in the consensual search of appellant's automobile, and he testified that he did not feel 100% out of danger, because "there were some signals there." Thomas, a ten-year veteran of the Arkansas State Police, testified that based on his experience he suspected that appellant was armed, due to appellant's extreme nervousness, his rigid posture, his trembling lips, his manner of dress, and appellant's criminal background. With appellant's previous felony conviction for aggravated robbery, his possession of a firearm would violate Ark. Code Ann. § 5-73-103(a)(1) (Repl. 1997) (felon in possession of a firearm), and such a violation would constitute a felony. Viewing the totality of the circumstances, Trooper Thomas could certainly reasonably suspect that appellant was armed with a weapon, thereby committing a felony. Therefore, appellant's detention was proper under Rule 3.1.

Rule 3.4 of the Arkansas Rules of Criminal Procedure, which is used in conjunction with Rule 3.1, provides:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

We find that Trooper Thomas could reasonably believe that appellant was armed; thus, he was justified in searching appellant's person pursuant to Rule 3.4 to ensure his safety. Thomas testified that when he searched appellant's belt line, he felt a "rigid" object, which he believed to be a weapon. It was only when he had removed the object that he discovered it was a brick of what later proved to be cocaine.

The dissent cites *Knowles v. Iowa*, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), and *Leopold v. State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985), in support of its position that the search of appellant's person violated his Fourth Amendment rights. Both of these cases are distinguishable from the case at bar not only because they

involve vehicle searches rather than searches of a person, but also because in neither case had consent been granted. Here, Trooper Thomas asked appellant for consent to search his car; appellant agreed and signed a consent form. The pat-down search of appellant's person to ensure the officer's safety occurred after consent had been given to search the vehicle, as stated above.

The dissent also states that "the record does not show that the NCIC and Triple I information identified appellant as likely to be armed and dangerous," and surmises that "one would think that the information supplied to field officers would include a notice to that effect." It then broadly concludes "[t]he fact that Thomas mentioned no such notice dictates the conclusion that none was given because none was deemed warranted." These statements are purely speculative and have no basis from the record before us. To reach the conclusion which the dissent has reached is unfounded and imprudent.

Moreover, the dissent misleads the reader concerning appellant's "profile" when he relates the trooper's testimony about the totality of the circumstances which justified the pat-down search. The actual exchange between appellant's counsel and Trooper Thomas is as follows:

> Q   That is a profile situation, is that right? We have got a guy that is nervous. We have a person who is a convicted felon of narcotics. That is creating a profile of somebody who is conducting criminal activity, in this case trafficking in narcotics, and that is the reason that you wanted to search, isn't that true?
>
> A   My search was based on the information that was available to me by his demeanor and the pat down was conducted solely for officer's safety at the point I began to pat down.
>
> Q   My question is, Officer, but those circumstances created a profile situation where you believed there were drugs in that car and that is why you wanted to search?
>
> A   If you want to refer to it as a profile that's fine. I don't refer to that as a profile.

Trooper Thomas articulated the reasons on which he based his search and made it clear that the basis was not a "profile."

■   Having made an independent determination based on the totality of the circumstances, we find that the trial court properly denied appellant's motion to suppress; therefore, we affirm.

Affirmed.

AREY, JENNINGS, and BIRD, JJ., agree.

GRIFFEN and ROAF, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. Despite a unanimous decision less than two weeks ago by the Supreme Court of the United States that invalidated a full search of a car after a police officer stopped a motorist and issued a speeding citation, *Knowles v. Iowa*, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), today a majority of our court has upheld a "pat down" search and the denial of a motion to suppress evidence seized from it by a state trooper who gave appellant a warning ticket for following too closely and admitted that he had no probable cause to request that appellant consent to a search of his automobile. I believe that the appellant's conviction following a conditional guilty plea to the manufacture, delivery or possession of a controlled substance and his sentence (forty years' imprisonment) should be reversed and remanded because the trooper lacked reasonable cause to detain appellant after issuing the warning ticket and because the trooper lacked a reasonable basis for believing that appellant presented a threat to his safety. Thus, I would hold that the trial court's denial of the motion to suppress the cocaine was clearly erroneous.

Appellant was stopped by Trooper Jeff Thomas of the Arkansas State Police on March 21, 1996 after Trooper Thomas observed appellant's car following too closely behind a tractor-trailer rig traveling eastbound on Interstate 30 in Miller County. At the suppression hearing, Thomas testified that appellant produced a Texas driver's license that identified him as Karriem Muhammad and that appellant said he was going to the Little Rock area to celebrate his father's birthday. Appellant appeared "very nervous" according to Thomas, but Thomas did not view that to be unusual. However, Thomas observed that appellant's nervous demeanor did not appear to calm after he received a

warning citation. Thomas ran a NCIC check and an Interstate Identification Index (what Thomas termed a "triple I") check and received a response from his Hope headquarters that appellant's criminal history involved a previous sale or possession of a dangerous drug and at least one arrest for aggravated robbery. Appellant was standing outside Thomas's vehicle when the response was given and was "very erect and still the whole time" that Thomas was on the radio. Thomas then directed appellant to enter the patrol unit where he requested written consent to search appellant's vehicle. Appellant sat with an erect and still posture in the patrol unit and signed the consent to search. Thomas called for back up and asked appellant to step from the patrol unit. He then testified:

> We walked to the right front fender of my unit. For my safety and for the things that I have been told by the dispatcher about the [appellant's] previous criminal record, particularly his previous drug conviction and an aggravated robbery conviction, and because of the nervousness that he was displaying, I asked him to put his hands on the cruiser and to spread his legs. I then began to pat him down for a weapon. I began in the chest area with the palms of my hands and began a patting type motion on his outer garment area, and then I worked to the wasitband area. I did not reach inside his clothing during this time. When my hands got to the belt line, I felt something very rigid with the palm of my right hand. It seemed to be resting upon a corner of some object. That object was very rigid and was consistent with what I thought to be the corner of a firearm sticking out of his waistband. At that time, I did not know what it was, but I believed that it was a firearm. At this time, the [appellant] became very fidgety. He had removed his hand from the hood of the vehicle and placed it on top of my hand and attempted to peel my hands back off the object. At that time, I subdued [appellant] and got him under control. I had him interlace his hands behind his head. I then searched [appellant] further. What I found was a brick of a compressed material wrapped in brown duct tape. It was protruding out of his groin area inside what appeared to be a lady's style girdle.

Thomas testified on cross-examination that he suspected that appellant's nervousness was related to the criminal history reported on the NCIC check, and that his decision to search

appellant's vehicle was based solely on the fact of appellant's nervousness and the information obtained in the NCIC report about appellant's narcotics conviction, stating: "Based on his demeanor and the information that was made available to me from the NCIC, I wanted to search his car for drugs. *I did not have probable cause to search his car.*" Thomas also admitted that the pat-down search was not conducted incident to an arrest, that he saw no bulges prior to patting appellant down, that appellant had not threatened him at any time, and that Thomas suspected that appellant would be armed based on the NCIC report about his previous arrest history. He testified:

> The totality of the circumstances that lead me to have a reasonable belief that [appellant] was carrying a firearm or committing a felony was that he was a convicted felon on parole for narcotics and his nervousness. Those things create a profile of a person who would be conducting criminal activity. As a law enforcement officer, a lot of my job concerns profile. . . If I went out tonight or this afternoon and stopped someone who was nervous and found from an NCIC check that he had been convicted previously of narcotics, I would probably want to search that person's vehicle also.

It is obvious that Thomas lacked reasonable cause to detain appellant after he decided to issue a warning rather than a traffic ticket for following too close because he lacked specific, articulable, and objective indicators that appellant was committing, had committed, or was about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property pursuant to Rule 3.1 of the Arkansas Rules of Criminal Procedure. Once Thomas issued the warning citation, there was no need to detain appellant in order to verify his identity or the lawfulness of his conduct. The "request" to search appellant's vehicle was based on nothing more than Thomas's naked curiosity that appellant may have been transporting drugs based on his previous narcotics arrest, not any contemporaneous indication that appellant was committing, had committed, or was about to commit the crimes outlined in Rule 3.1. Thomas even admitted that he lacked probable cause to search appellant's car.

It is also obvious that appellant posed no threat to Thomas at any time before Thomas conducted the pat-down search for weapons. Under Rule 3.4 of the Arkansas Rules of Criminal Procedure, if a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person *is armed and presently dangerous* to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and may seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall the search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

In this case, the State argues that Thomas had a reasonable basis for suspecting that appellant was armed and dangerous when he encountered him based on the information that Thomas obtained from the NCIC and Triple I inquiries concerning appellant's prior arrests on narcotics and aggravated robbery charges. But the record does not show that the NCIC and Triple I information identified appellant as likely to be armed and dangerous. Thomas offered no evidence that appellant engaged in any conduct that could even remotely be termed threatening. In fact, Thomas conceded that appellant was cooperative and polite, albeit nervous, throughout the encounter leading up to the pat-down search. It is simply astounding that we would deem the record as supporting a suspicion that appellant was armed and dangerous so as to present a safety risk to Thomas, let alone a *reasonable suspicion.*

In *Leopold v. State,* 15 Ark. App. 292, 692 S.W.2d 780 (1985), our court reversed and remanded convictions of possession of a controlled substance with intent to manufacture and deliver that arose from a weapons search by a Clark County deputy sheriff. There the appellants were stopped by two sheriff's deputies who spotted them driving along a gravel road owned by International Paper but open to the public in a remote area some four to six miles off a main highway. The deputies directed appellants to leave their vehicle after Leopold was unable to produce a driver's license and after Leopold stated that "they were just out riding around killing time." In explaining why the weapons search was invalid, Judge Donald Corbin wrote:

> The State failed to show legal justification for a protective search. The officer (whose testimony was the only evidence presented) failed to articulate any objective factual basis for a reasonable belief that appellants were dangerous and might gain immediate control of weapons. In fact, Officer Pierce testified that appellants were cooperative and courteous at all times. We find that the facts show that the officers were not motivated by fear nor that the officers' behavior at the time of the stop supports a finding that they believed they were in danger. Accordingly, all evidence seized as a result of the unjustified protective search is inadmissible and the trial court erred in denying appellants' motion to suppress.

15 Ark. App. at 300. If the pat-down search in *Leopold* was unconstitutional where a police officer encountered men that he merely suspected might have been night-hunting with weapons in their vehicle, surely the pat-down search in this case violates the Fourth Amendment.

The Fourth Amendment should not be dismissed out of hand by police officers who rely upon information about past criminal activity that poses no present threat to their safety. There is no presumption that someone is armed and presently dangerous simply because they have been arrested in the past, whether they were arrested on narcotics and aggravated robbery charges or for some other offenses. If the police agencies responsible for compiling and reporting NCIC and Triple I information to officers in the field believe that a person may be a likely threat to the safety of those officers and others, one would think that the information supplied to field officers would include a notice to that effect. The fact that Thomas mentioned no such notice dictates the conclusion that none was given because none was deemed warranted. That we would now deem a threat to have existed, based on information from police agencies that reported no such threat to field officers who might need that information to protect themselves and the public, and do so even after the field officer admitted that a detainee made no threatening actions but was polite, nervous, and cooperative, is nothing short of fantastic.

The State's position elevates Thomas's naked hunch to extravagant fantasy; the majority decision now accords that extrav-

agant fantasy the dignity of Fourth Amendment authority. The majority does so in the face of undisputed proof that Thomas lacked probable cause to search appellant's vehicle so as to justify further detaining him. The majority does so in the face of undisputed proof that appellant did not threaten Thomas in any shape, form, or fashion. The majority does so in the face of undisputed proof that Thomas intended to let appellant go on his way with a warning before he received the NCIC and Triple I information and decided to undertake a plainly unwarranted expedition into appellant's vehicle and personal security. And the majority bottoms its decision in doing so on appellant's consent to the unwarranted vehicular search within a fortnight of a unanimous decision by the Supreme Court of the United States in *Knowles v. Iowa, supra,* that the police have no right to search vehicles merely because they issue traffic citations.

The Supreme Court in *Knowles* addressed the "legitimate and weighty" concern about officer safety in determining that the search incident to arrest exception did not justify the search of Knowles' vehicle by an Iowa police officer. I recognize the difference between the vehicular search involved in *Knowles* and the pat-down search in this case. I also realize that in writing for the unanimous Court in *Knowles,* Chief Justice Rehnquist affirmed that concern for officer safety may justify the "minimal" additional intrusion of ordering a driver and passengers out of a vehicle, yet not justify the "often considerably greater intrusion attending a full field-type search." Yet that is precisely the point of my disagreement with the State's position and the majority decision. Once appellant was stopped for following too closely and given a warning, Thomas had no need to further detain him or search him. He did not need to do so to discover evidence for following too closely. Thomas did not need to detain appellant to establish his identity because appellant had identified himself and Thomas had verified his identity through the NCIC and Triple I inquiries. Thomas had no valid reason for detaining appellant after he issued the warning, no reason to mount an expedition into his vehicle, and no reason to lay hands on appellant's person. His conduct was precisely what the Fourth Amendment was intended to protect against.

There is something chilling about the idea of a law enforcement officer deliberately undertaking a full search of a vehicle and the detention and pat-down of its driver when he knows that he lacks legal justification to search it, but does so because he is dealing with a solitary motorist who previously ran afoul of the law. The "request" to search, when acquiesced in by a nervous motorist, cannot be deemed justification for a police officer to lay hands on someone when he has no reasonable basis for suspecting the detainee is armed and presently dangerous; this is a gross departure from the rationale for the Fourth Amendment. If the majority decision is ultimately sustained, the requirement of Ark. R. Crim. Pro. 3.4 that a law enforcement officer reasonably suspect that a detainee is armed and presently dangerous is worthless to protect people from unwarranted pat-down searches for weapons, especially those who have prior arrests or convictions.

The Fourth Amendment's guarantee against unreasonable searches and seizures ought to protect against governmental fantasy and overreaching, not dignify it.

I dissent, and am authorized to state that ROAF, J., joins in this opinion.