Robert Stephen HILL *v.* STATE of Arkansas

CA CR 03-1433 206 S.W.3d 300

Court of Appeals of Arkansas
Substituted Opinion on Denial of Rehearing
April 6, 2005

*Patrick J. Benca* and *John Wesley Hall, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. Appellant Robert Hill entered a conditional plea of guilty to a charge of possession of methamphetamine and was sentenced to sixty months' imprisonment, thirty of which were suspended. On appeal, Hill challenges the trial court's denial of his motion to suppress. We reverse and remand.

On September 5, 2000, officer Todd Brown responded to a disturbance call at the home of Judy Holladay. Officer Brown testified that Holladay informed him that the disturbance was drug-related and involved a man and a woman who left in a blue truck. Holladay stated that she believed they possessed crystal methamphetamine. Officer Brown relayed this information to Chief Cook, who stopped a vehicle meeting the description of the truck that Hill was driving. Officer Brown arrived on the scene a few moments later.

Chief Cook testified that as he approached the truck, he asked Hill for identification and registration. Cook testified that he asked Hill to step out of the truck and immediately conducted a pat-down search. Cook stated that he did the pat-down for officer safety and that he always does a pat-down "where there's possible narcotics or a disturbance involved or where there's a weapon present, reported or unreported" for officer safety. He stated that such a frisk is part of his policy, and that he had not seen Hill do anything in his presence that would lead him to believe that Hill had a weapon.

Chief Cook frisked Hill and found no weapons or contraband. Cook asked if he could search the vehicle, and Hill granted permission. The officers conducted the vehicle search and found nothing. Cook testified that he had felt a small bulge in Hill's front pocket while doing the pat-down and that through his experience as a police officer, he had learned that drugs were often kept in pill bottles. Cook asked Hill to show him what was in his pocket, and Hill handed over a pill bottle without saying anything. Cook opened the bottle and discovered a white, powdery substance that he believed to be methamphetamine. Hill was arrested for possession of a controlled substance.

Hill now argues that the trial court erred in denying his motion to suppress because the frisk was without requisite suspicion and because he did not consent to a search of his person.[1] As a preliminary matter, the State argues that Hill appealed the wrong order and that we have no jurisdiction under *McDonald v. State*, 354 Ark. 28, 124 S.W.3d 438 (2003) (*McDonald I*). A brief summary of the facts with regard to this jurisdictional issue are necessary.

On October 2, 2001, the motion to suppress hearing was held, and Hill's attorney argued that the frisk was illegal under

---

[1] Hill actually asserts several issues on appeal, including that there was no justification for the initial vehicle stop; that the officers lacked reasonable suspicion to continue to detain Hill after the stop; that the identity of the contraband in his pocket was not immediately apparent, thus violating the "plain feel" doctrine; and that opening the bottle constituted an unreasonable search because there was no reason to believe it could hold a weapon. However, the State correctly maintains that Hill failed to preserve these issues below. Upon a review of the record, the only issues Hill argued in his motion to suppress were that the frisk exceeded the scope of *Terry v. Ohio*, 392 U.S. 1 (1968), and that his consent in handing over the bottle was not voluntary.

*Terry v. Ohio*, 392 U.S. 1 (1968), because the officer did not have a reasonable, articulable suspicion to believe Hill was armed and because Hill was unable to give voluntary consent to the search. The trial court denied Hill's motion to suppress, and Hill entered a conditional plea of guilty. The judgment and commitment order was filed on March 20, 2002. Hill filed a timely notice of appeal with regard to that order, but we dismissed the appeal because the plea was improper pursuant to Rule 24.3(b). *See Hill v. State*, 81 Ark. App. 178, 100 S.W.3d 84 (2003). Hill filed a petition for Rule 37 relief, and on August 11, 2003, the trial judge resolved the Rule 37 issues by ordering the parties to submit a substitute conditional plea agreement in compliance with the rule. On August 11, 2003, the corrected plea agreement was filed, and Hill filed a notice of appeal on September 2, 2003, which stated that he "appeals the order denying the motion to suppress after his conditional plea." An amended judgment and commitment order was not filed until May 17, 2004, and no subsequent notice of appeal was filed.

The State is correct that on the face of the notice of appeal, the wrong order is identified. However, *McDonald I* was a per curiam opinion denying a motion for a rule on the clerk that did not mandate dismissal of the case. The appellant's counsel was instructed that if she admitted fault, the motion would be deemed a motion for belated appeal and would be granted. Counsel did not admit fault, and the case was before the supreme court again in *McDonald v. State*, 356 Ark. 106, 146 S.W.3d 883 (2004) (*McDonald II*). In that opinion, the court explained the difference between a motion for a rule on the clerk and a motion for belated appeal. The court only mentioned briefly that the wrong order had been identified in the notice of appeal and decided the case on the basis of whether the notice of appeal was timely with regard to the denial of the motion to suppress.

*McDonald II* concludes with the court's finding that the notice of appeal was untimely, that the attorney was at fault, and that a belated appeal was granted. *McDonald v. State* is now in this court, and, on January 26, 2005, we issued an opinion requiring supplementation of the record, *see McDonald v. State* (not for publication Jan. 26, 2005) (*McDonald III*). Therefore, contrary to the State's suggestion, none of the prior cases in the *McDonald* trilogy mandates dismissal of the present case.

 Further, this case is distinguishable from *McDonald I*. In *McDonald I*, the clerk denied lodging the record because the notice of appeal was untimely. In this case the clerk lodged the record because on its face the notice was timely. Also, appellant's notice of appeal was filed on September 2, 2003, and *McDonald I* was not handed down until September 11, 2003. Thus appellant was not on notice of its holding. Additionally, appellant filed an appropriate notice of appeal from the first judgment. The fact that it was filed long before the amended judgment and commitment order of May 17, 2004, does not render it ineffective. Arkansas Rule of Appellate Procedure – Criminal 2(b)(1) provides that "[a] notice of appeal filed after the trial court announces a decision but before the entry of the judgment or order shall be treated as filed on the day after the judgment or order is entered." Consequently, Hill's notice of appeal dated March 21, 2002, could be treated as if it were filed on May 18, 2004.

 Under these circumstances — particularly considering that we have already decided this case on its merits and would eventually reach the merits even if we sent it back — we are satisfied that appellant timely filed his notice of appeal. Therefore, based on the extraordinary procedural posture of this case, we proceed to the merits.

 In reviewing a trial court's denial of a motion to suppress, we make an independent determination based upon the totality of the circumstances and reverse only if the ruling is clearly against the preponderance of the evidence. *Pettigrew v. State*, 64 Ark. App. 339, 984 S.W.2d 72 (1998). The Fourth Amendment to the Constitution of the United States protects the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. *Leopold v. State*, 15 Ark. App. 292, 692 S.W.2d 780 (1985). Rule 3.1 of the Arkansas Rules of Criminal Procedure provides that an officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. Rule 3.4 of the Arkansas Rules of Criminal Procedure states that an officer who has detained a person under

Rule 3.1 and reasonably suspects that the person is armed and presently dangerous to the officer or others, may search the outer clothing of such person and the immediate surroundings for any weapon or other dangerous thing which may be used against the officer or others. Reasonable suspicion has been defined as a suspicion based upon facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion. *Pettigrew*, 64 Ark. App. at 345–46, 984 S.W.2d at 74–75. Rule 3.4 is basically the embodiment of the standard developed by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), and *Sibron v. New York*, 392 U.S. 40 (1968), both of which dealt with "stop and frisk" situations.

A stop is far less intrusive than a frisk, and the constitutional requirements for a stop are correspondingly less. *Leopold*, 15 Ark. App. at 297, 692 S.W.2d at 783. Thus, a police officer may constitutionally stop a suspicious person although he has no justification to frisk him. *Id.*, 692 S.W.2d at 783. Once there is a reasonable stop under the Fourth Amendment, the governmental interest that permits the greater intrusion of the "frisk" is not "the prevention or detection of crime, but rather the protection of the officer making the stop." *Terry*, 392 U.S. at 23–24. A frisk is only justified when the officer has a reasonable suspicion that the detainee is armed. *Ybarra v. Illinois*, 444 U.S. 85 (1979). The frisk must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29. An officer has the right to frisk a detainee's possessions under *Terry* if there is a reasonable suspicion that there is a weapon located there. *Leopold*, 15 Ark. App. at 297, 692 S.W.2d at 784.

The test in determining whether the frisk was reasonable is an objective one. *Id.* at 299, 692 S.W.2d at 785. While the officer need not be absolutely certain that the individual is armed, the basis for his acts must lie in a reasonable belief that his safety or that of others is at stake. *Terry*, 392 U.S. at 27. Essentially, the question is whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger. *Leopold*, 15 Ark. App. at 299, 692 S.W.2d at 785. The officer's reasonable belief that the suspect is dangerous must be based on "specific and articulable facts." *Terry*, 392 U.S. at 21.

██ The officer in this case failed to articulate any objective, factual basis for a reasonable belief that Hill was dangerous or might gain immediate control of a weapon. Cases in which pat-downs are found to be constitutional searches regularly require some articulable, objective facts giving the officer a reason to fear for his safety. *See, e.g., Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999) (holding frisk was reasonable based on appellant's dress and nervousness, as well as fact that officer knew appellant had previous convictions for gun-related crimes). Here, Chief Cook provided no reasons for frisking Hill other than that it was "policy." He admitted he had not seen anything that led him to believe that Hill had a weapon. Although Hill was reportedly causing a disturbance at Holladay's home, there was no report of weapons. Based on our review of the totality of the circumstances, Chief Cook lacked specific, objective, and articulable facts to support a reasonable suspicion that Hill was armed and presently dangerous when he conducted the pat-down search.

██ The State next argues, however, that even assuming the frisk was an unconstitutional search, the defect is cured by Hill's voluntarily consent in handing over the pill bottle. In analyzing this issue, we must determine whether Hill's consent to search was "sufficiently an act of free will to purge the primary taint." *Stone v. State*, 348 Ark. 661, 673–74, 74 S.W.3d 591, 598 (2002) (citing *United States v. Ramos*, 42 F.3d 1160, 1164 (8th Cir. 1994); *Wong Sun v. United States*, 371 U.S. 471(1963)). Further, the attenuation must be determined by weighing the seriousness of the police misconduct. *Stone*, 348 Ark. at 674, 74 S.W.3d at 598 (citing *Brown v. Illinois*, 422 U.S. 590 (1975)). Our supreme court has previously held that a lapse of time can dissipate the taint of illegal police conduct. *See, e.g., Mitchell v. State*, 271 Ark. 512, 609 S.W.2d 333 (1980) (finding that a confession given eighteen days after an illegal arrest admissible because the intervening time period sufficiently dissipated the taint). An intervening event can also be an attenuating circumstance that cures the defect. *See, e.g., Brewer v. State*, 271 Ark. 810, 611 S.W.2d 179 (1981) (holding that defendant's confession was not tainted by pretextual arrest because defendant's girlfriend told defendant in the interim that she had already implicated him in the criminal activity).

In this case, we have neither time nor intervening events to dissipate the taint of Chief Cook's illegal frisk. There was clearly only an inconsiderable amount of time between the pat-down and Hill's handing over the contents of his pocket. Although Cook testified that he could see the small bulge in Hill's pocket, Cook also stated that he had felt the bulge when doing the pat-down. The lapse of time between the pat-down and the request to see what was in Hill's pocket is not sufficient to dissipate the taint, and there was no intervening act to purge the taint. The methamphetamine seized as a result of the illegal frisk is the fruit of the poisonous tree and must be suppressed. Because we hold the trial court's denial of appellant's suppression motion was clearly against the preponderance of the evidence so that his conviction for possession must be reversed and remanded, we need not reach the merits of Hill's second argument on appeal, that his consent was not voluntary because of duress or coercion.

Reversed and remanded.

GLADWIN, ROBBINS, BIRD, GRIFFEN, and NEAL, JJ., agree.