2010 Ark. App. 792

**Kirby Donald FRANKLIN, Jr., Appellant**

**v.**

**STATE of Arkansas, Appellee.**

**No. CA CR 10–566.**

Court of Appeals of Arkansas.

Dec. 1, 2010.

Timothy R. Leonard, Hamburg, for appellant.

Dustin McDaniel, Atty. Gen., Rachel M. Hurst, Asst. Atty. Gen., Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Kirby Franklin, Jr., was convicted by a Drew County jury of possession of cocaine and sentenced, as a habitual offender, to eighteen years in the Arkansas Department of Correction. Appellant argues that the circuit court erred in denying his motion to suppress physical evidence discovered during a pat-down search of his person. We affirm.

### Facts

In response to a tip that appellant was selling crack cocaine, law-enforcement officers located appellant and conducted an investigatory stop pursuant to Arkansas Rule of Criminal Procedure 3.1 (2009). Appellant was charged by information with possession of cocaine with intent to deliver. He filed a timely motion to suppress the vial of crack cocaine that fell out of his pocket during a pat-down search of his person. A suppression hearing was held on January 25, 2010.

Deputy Willie Rex Davis of the Drew County Sheriff's Office was the only witness who testified at the hearing. Deputy Davis testified that he received a call from a confidential informant with whom he had worked in the past and who had supplied information that had led to several felony arrests. Deputy Davis stated that on that day, the confidential informant told both Deputy Davis and Sheriff Gober that he was with appellant when appellant sold someone crack cocaine on Davis Street. Deputy Davis testified that the informant stated that (1) appellant had on him a plastic vial of crack cocaine with a red lid, and (2) appellant was driving a maroon Chevrolet Caprice with big tires and chrome wheels.

Deputy Davis drove to the area to investigate, located appellant driving a maroon Chevrolet Caprice near Davis Street, and began to follow him. According to Deputy Davis, appellant spotted him when he passed by, and when Deputy Davis turned around to follow appellant, appellant tried to lose him by making a couple of quick turns. Appellant turned into the first yard he could get to, at which time Deputy Davis pulled in, walked up to appellant's vehicle, identified himself, and told appellant he was investigating the information he had received. Deputy Davis noticed that appellant had a screwdriver in his hand and that he used the screwdriver to shut off the vehicle. Deputy Davis stated that he "took precautions at that point." Appellant stepped out of the vehicle, remained cooperative, and consented to a search of the vehicle. During a subsequent pat-down search for weapons, appellant tensed up and became combative, and subsequently, a plastic vial of crack cocaine fell out onto the ground.

After argument by counsel, the circuit court requested supplemental briefs from both appellant and the State. The circuit court later entered an order denying appellant's motion |₃to suppress and articulated additional grounds for the denial in chambers prior to appellant's trial.[1]

The cocaine was admitted into evidence at trial. Additionally, Deputy Mitchell, who arrived at the scene just after Deputy Davis initiated the investigatory stop, testified at trial that Deputy Davis asked appellant if he could "pat search" him and that appellant consented. He explained that, after Deputy Davis found a large amount of cash in appellant's front pocket, appellant "tensed up," and they calmed

him down. Both deputies testified that, at that point, Sheriff Gober walked up and asked appellant if he could pat him down to see if he had anything, and appellant agreed that he could. All three of the officers stated that appellant unbuckled his own belt so that Sheriff Gober could search him, at which time Sheriff Gober ran his fingers around the edge of appellant's pants causing a vial of crack cocaine to fall down the leg of appellant's pants and onto the ground. Once the vial hit the ground, appellant started to stomp on it, and the officers placed him under arrest.

The jury found appellant guilty of possession of cocaine with intent to deliver, and a judgment and commitment order was entered on March 1, 2010. Appellant filed a timely notice of appeal on March 10, 2010.

## I. Standard of Review and Applicable Law

|₄In reviewing the denial of a motion to suppress evidence, an appellate court conducts a de novo review based upon the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Welch v. State*, 364 Ark. 324, 219 S.W.3d 156 (2005). The appellate court defers to the superior position of the circuit judge to pass upon the credibility of witnesses. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). It will reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Welch, supra.*

---

1. The basis of the denial of appellant's motion is not clear from the record. The circuit court's written order generally denies appellant's motion to suppress; however, prior to

the trial, the circuit court verbally stated that the pat-down search was reasonable and that a reasonable officer in the same circumstances would conduct a weapons frisk.

■ Arkansas Rule of Criminal Procedure 3.1 provides that an officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. If an officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous, the officer may search the outer clothing of the person and the immediate surroundings for any weapon or other dangerous item. Ark. R.Crim. P. 3.4 (2010). The test in determining whether a frisk is reasonable is an objective one. *Pettigrew v. State,* 64 Ark. App. 339, 984 S.W.2d 72 (1998). The question is whether a reasonably prudent person in the officer's position would be warranted in the belief that the safety of the police or that of others was in danger. *Id.*

■ Due weight is given to specific reasonable inferences an officer is entitled to derive from the situation in light of his experience as a police officer. *Muhammad v. State,* 64 Ark. App. 352, 984 S.W.2d 822 (1998). An officer's reasonable belief that a suspect is dangerous must be based on specific and articulable facts. *Pettigrew, supra.* A suspect's demeanor and manner, whether a suspect is carrying anything, and what he is carrying, any information received from third persons, and a suspect's apparent effort to avoid identification or confrontation by law enforcement officers are all factors to be considered in determining whether an officer has grounds to reasonably suspect. *See* Ark.Code Ann. § 16–81–203 (Repl. 2005).

## II. *Discussion*

Appellant submits that in order for an officer to perform a frisk search under Rule 3.4, an officer must reasonably suspect that the detainee is armed and presently dangerous to the officer or others. Reasonable suspicion has been defined as a suspicion based upon facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion. *Pettigrew, supra.* Appellant submits that Rule 3.4 is basically the embodiment of the standard developed by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), both of which dealt with "stop and frisk" situations.

■ A stop is far less intrusive than a frisk, and the constitutional requirements for a stop are correspondingly less. *Leopold v. State,* 15 Ark. App. 292, 692 S.W.2d 780 (1985). Thus, a police officer may constitutionally stop a suspicious person although he has no justification to frisk him. *Id.* Once there is a reasonable stop, the governmental interest that permits the greater intrusion of the frisk is not the prevention or detection of crime but rather the protection of the officer making the stop. *Id.* at 297, 692 S.W.2d at 784. Even then, the frisk must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer. *Id.* Additionally, appellant acknowledges that an officer has the right to frisk a detainee's possessions under *Terry, supra,* if there is a reasonable suspicion that there is a weapon located there. *Leopold,* 15 Ark. App. at 297, 692 S.W.2d at 784.

The test in determining whether the frisk was reasonable is an objective one.

*See Leopold, supra.* While the officer need not be absolutely certain that the individual is armed, the basis for his acts must lie in a reasonable belief that his safety or that of others is at stake. *Terry, supra.* Essentially, the question is whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger. *Leopold, supra.* The officer's reasonable belief that the suspect is dangerous must be based on specific and articulable facts. *Id.*

Appellant argues that the officers in the instant case lacked reasonable suspicion that he was armed and dangerous. Accordingly, he contends that, pursuant to Rule 3.4 and *Terry,* the pat-down search of his person was unreasonable under the Fourth Amendment of the United States Constitution; therefore, the crack cocaine should have been suppressed. He maintains that the totality of the circumstances in this case provides no "specific and articulable facts" upon which the inference could reasonably be warranted that Deputy Davis reasonably believed appellant to be "armed and presently dangerous" when the pat-down search was performed.

We disagree. Neither probable cause nor reasonable suspicion is necessary for an officer to request consent for a search. *Howe v. State,* 72 Ark. App. 466, 39 S.W.3d 467 (2001). An officer may conduct a search of an individual's person without a search warrant or other color of authority if the individual consents to the search. Ark. R.Crim. P. 11.1(a) and 11.2(a) (2010). The State has the burden of proving by clear and positive evidence that consent to a search was freely and voluntarily given and that there was no actual or implied duress or coercion. Ark. R.Crim. P. 11.1(b) (2010).

Valid consent to search must be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *Welch, supra.* Knowledge of the right to refuse consent to a search is not a requirement to prove the voluntariness of consent. *Medlock v. State,* 79 Ark. App. 447, 89 S.W.3d 357 (2002). A search based on consent shall not exceed, in duration or physical scope, the limits of the consent given. Ark. R.Crim. P. 11.3 (2010). The standard for measuring the scope of a suspect's consent is that of objective reasonableness—what the typical reasonable person would have understood by the exchange between the officer and the suspect. *Howe, supra.*

There is evidence before us, specifically the trial testimony from Deputies Mitchell and Davis, along with Sheriff Gober, that indicates that appellant consented to a search of his person. Nothing in the record suggests that appellant's consent was not freely or voluntarily given. The officers did not instruct appellant that he was required to cooperate with the search, and they were not required to inform him that he could refuse consent to the search. *Medlock, supra.* To the contrary, testimony indicated that appellant undid his own belt to allow the sheriff to search him. The State argues, and we agree, that the search was reasonable and did not exceed the scope of the consent given. Sheriff Gober simply felt the outside edge of appellant's pants, shook them a little, and the vial of crack cocaine fell out on its own.

Additionally, we hold that the search was lawful because the officers reasonably suspected that appellant was armed and that their safety or that of others was in danger. Appellant was suspected of selling crack cocaine, and people involved in narcotics dealing often carry weapons. *Cf. Kilpatrick v. State,* 322 Ark. 728, 912 S.W.2d 917 (1995). It is undisput-

ed that appellant was actually carrying a screwdriver, which could be used as a weapon. Under such circumstances, a reasonable officer could, out of concern for his safety, conduct a pat-down search for weapons before taking his attention away from a suspect to conduct a vehicle search. Deputy Davis indicated that he was concerned for his safety, as evidenced by his testimony that, when he saw the screwdriver in appellant's hand, he "took precautions at that point." Accordingly, we hold that the pat-down search was justified under the totality of the circumstances.

 Lastly, we hold that the officers had probable cause to arrest appellant and search him incident to that arrest. A law-enforcement officer may arrest a person without a warrant if he has reasonable cause to believe that the person has committed a felony. Ark. R.Crim. P. 4.1(a)(i) (2010). Reasonable cause exists when "the facts and circumstances within the officers' collective knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant in a man of reasonable caution the belief that an offense has been committed by the person to be arrested." *Blockman v. State*, 69 Ark. App. 192, 197–98, 11 S.W.3d 562, 566 (2000) (internal quotations omitted). Reasonable cause to arrest without a warrant requires less proof than that required to sustain a conviction, and this court's review of the existence of reasonable cause is liberal rather than strict. *Id.* An officer who has the authority to make an arrest also has the authority to conduct a search of the person incident to the arrest to obtain evidence of the commission of the offense for which he has been arrested or to seize contraband, the fruits of a crime, or other things criminally possessed or used in conjunction with the offense. Ark. R.Crim. P. 12.1(d) (2010). A search is valid as incident to a lawful

arrest even if conducted before the actual arrest as long as the arrest and search are substantially contemporaneous and probable cause to arrest existed prior to the search. *Blockman, supra.*

The information from the reliable informant, which was confirmed by officers, supplied probable cause to arrest appellant. *See Blockman, supra.* Because the officers had probable cause to arrest appellant, they also had the authority to conduct a search incident to arrest, which is permissibly more intrusive than a frisk under Rule 3.4 and *Terry.* *Id.*

Affirmed.

VAUGHT, C.J., and HENRY, J., agree.