Robert DUNCAN *v.* STATE of Arkansas

CA CR 91-125 828 S.W.2d 847

Court of Appeals of Arkansas
Division II
Opinion delivered April 15, 1992

*Wallace & Hamner*, by: *Dale E. Adams*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Melissa K. Rust*, Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Chief Judge. Robert Duncan appeals from his conviction of the crime of theft by receiving property valued in excess of $2,500.00, for which he was fined $10,000.00. Appellant contends that the trial court erred in denying his motion for a directed verdict; in allowing the introduction of expert testimony concerning the mathematical probabilities of two keys fitting the same car; and in permitting Ricky Bauer to testify as an expert. We find no error and affirm.

A motion for directed verdict is a challenge to the sufficiency of the evidence. In addressing such challenges this court will

affirm the trial court's denial if there is substantial evidence to support the jury's verdict. Substantial evidence is evidence of such sufficient force that it will compel a conclusion one way or another, inducing the mind to pass beyond suspicion or conjecture. In our review of such cases, we view the evidence in the light most favorable to the appellee, considering only that tending to support the guilty verdict. *Tarentino* v. *State*, 302 Ark. 55, 786 S.W.2d 584 (1990).

Our law makes no distinction between direct evidence and circumstantial evidence. The fact that evidence is circumstantial does not render it insubstantial. *Small* v. *State*, 5 Ark. App. 87, 632 S.W.2d 448 (1982). When circumstantial evidence alone is relied upon, it must indicate the accused's guilt and exclude every other reasonable hypothesis. Whether circumstantial evidence excludes every other reasonable hypothesis is usually a question for the jury, and it is only when the evidence leaves the jury solely to speculation or conjecture that it is insufficient as a matter of law. *Cristee* v. *State*, 25 Ark. App. 303, 757 S.W.2d 565 (1988); *Deviney* v. *State*, 14 Ark. App. 70, 685 S.W.2d 179 (1985). Jurors are not required to set aside their common knowledge but may consider evidence in the light of their observations and experiences in the ordinary affairs of life and draw reasonable inferences from circumstantial evidence to the same extent that they could from direct evidence. *Payne* v. *State*, 21 Ark. App. 243, 731 S.W.2d 235 (1987).

Arkansas Code Annotated § 5-36-106(a) (1987) provides that a person commits the offense of theft by receiving if he receives, retains, or disposes of stolen property of another person, knowing it was stolen or having good reason to believe it was stolen. Subsection (e)(1) provides that theft by receiving is a class "B" felony if the value of the property is $2,500.00 or more.

Danny Kimbrell, general manager of North Point Mazda, testified that in November 1989 his dealership received a 1989 Mazda RX7 Turbo (Turbo), equipped with power windows, power locks, radio stereo-compact disc player, plush floor mats, black leather seats, and an interior safety lock box. Several days later, the interior of this vehicle had been completely stripped and all of the removable parts on the inside of the car had been taken. He also testified that in 1988 his agency sold appellant a black

Mazda RX7 Sports Coupe (Coupe), which was equipped with a cloth interior and none of the extras such as those on the Turbo.

An official from Twin City Bank testified that appellant had financed his vehicle through the bank. In October of the following year, appellant's payments were in default and the vehicle was repossessed by the bank. The official stated that the bank delivered the vehicle to North Point Mazda for appraisal.

Kimbrell testified that he examined the repossessed vehicle and found that it now contained, with the exception of the stereo system, the same type of extra equipment as had been stripped from the more expensive Turbo. These parts contained only model numbers and could not be identified by serial number as being the stolen ones.

The vehicle had originally been black, but by the time it was repossessed it had been repainted white. Kimbrell testified that at the time the replacement parts were put on appellant's vehicle, they were not available at the dealership, junkyards, or any other place in the Little Rock area because they were from a new model. Only two Turbos had been sold in Little Rock and none had been wrecked. He testified that all of the parts not originally on the repossessed car were the same type as those missing from the stripped vehicle.

Rebecca Ford testified that she was married to appellant when he purchased the vehicle, and that she had subsequently seen the vehicle on several occasions in a body shop where appellant was temporarily employed. At one time, she saw it there being painted white. She said she subsequently saw a black hood with a scoop being painted white and placed on the vehicle. She testified that she also saw appellant switching the interior of the vehicle by installing leather seats and door panels, a new gear shift, carpets, and portions of a dashboard.

Ricky Bauer testified that he had been in the automobile business for eighteen years. During that period of time, he had been a mechanic and worked in parts departments, and he was presently the parts manager for North Point Mazda. He testified that he was familiar with the manner in which Mazda keys were made, and that on each RX7 model, one key fit all of the locks. On

the stripped vehicle, the key that fit the ignition would also open all of the other locks, including the safety lockbox in the rear seat. He tried to open the lockbox on the repossessed vehicle with the ignition key of the repossessed vehicle. It did not fit. He then obtained from company records the key codes to the stripped vehicle and, according to those codes, cut a key which did not fit the ignition of the repossessed car, but which did open the lockbox that had been placed in it. The vehicle sold to appellant originally contained no such lockbox. He testified that because of the way Mazda keys were designed and made, the probability of one key fitting two cars was 1 in 7500.

He stated that many of the interior accessories on the repossessed car were not original equipment. All of the added features were the same type as those items listed as stolen from the Turbo, with the exception of the Turbo's stereo system and two doors. Based on his experience in dealing with both new and used parts for Mazda cars, he opined that the value of the parts stolen from the Turbo was in excess of $7,000.00.

While there was no direct evidence that the parts added to the repossessed vehicle were those taken from the stripped one, we cannot conclude that the inferences arising from the proven facts foreclose such a conclusion. The fact that parts were stolen from the stripped vehicle was clearly established, as was their value. There was evidence that the parts installed on appellant's vehicle after its purchase had similar model numbers to the model numbers of the parts from the stripped vehicle. There was also evidence that those replacement parts found on the repossessed vehicle were not available at that time either in Mazda parts departments or junkyards. In addition, there was evidence that on each RX7 model, one key fit all of the locks. Here, the ignition key of the repossessed vehicle could not open the lockbox on the repossessed vehicle; yet, a key cut from the code to the stripped vehicle did open the lockbox. From our examination of the record, we cannot conclude that the jury's determination that the finding of guilt of theft by receiving of a value in excess of $2,500.00 is not supported by substantial evidence.

Appellant next contends that the trial court erred in permitting Bauer to testify about the mathematical probability of two keys fitting the same vehicle. We agree with appellant that

the interjection of sophisticated mathematical probabilities into a criminal trial raises a number of concerns. However, our courts have permitted in many instances similar expert testimony after analyzing human hair, blood, tire tracks, and other physical evidence where there is a reasonable basis for the opinion stated by the expert. In *Miller* v. *State*, 240 Ark. 340, 399 S.W.2d 268 (1966), the supreme court ruled that admission of unsubstantiated, speculative testimony, based on probabilities, was erroneous. Such opinions may not be predicated on estimates and assumptions, without a reasonable foundation or basis for the opinion. However, in *Miller* the court quoted with approval from 20 Am. Jur. *Evidence* § 795:

> [A]n expert witness' view as to probabilities is often helpful in the determination of questions involving matters of science or technical or skilled knowledge. . . . It is necessary, however, that the facts upon which the expert bases his opinion or conclusions permit reasonably accurate conclusions as distinguished from mere guess or conjecture.

*See* 31A Am. Jur. 2d *Expert and Opinion Evidence* § 86 (1989).

Here, the witness's testimony as to the probability of one key fitting two vehicles was not based upon estimates or assumptions. He reasonably based his opinion on his experience and personal knowledge of the manner in which keys were made and the key-code books of the Mazda manufacturer.

■ Appellant relies heavily on the decision in *United States* v. *Massey*, 594 F.2d 676 (8th Cir. 1979). In *Massey*, the court held that the admission of such evidence constituted reversible error under the circumstances of that case. There, the judge injected himself into the interrogation of the expert. The judge's comments construing the expert's testimony with respect to the mathematical probabilities, coupled with the prosecutor's emphasis on the mathematical probabilities in his closing argument, were found to constitute "plain error" under Rule 52(b) of the Federal Rules of Criminal Procedure, and required reversal of the defendant's robbery conviction. Here, the trial judge did

not inject himself into the interrogation nor comment upon the probabilities. Although the prosecuting attorney did allude to those probabilities in her closing argument, no objection was made to her argument on any basis. Our courts, unlike the federal courts, do not recognize the "plain error rule" but require a specific and timely objection in order to preserve an issue for appeal. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

Also, the case of *People* v. *Collins*, 68 Cal.2d 319, 438 P.2d 33, 66 Cal. Rept. 497 (1968), is not applicable here. There, instead of relying on data accepted in the field, the expert estimated the frequency of the occurrence of certain characteristics and based his probability projections on those estimates. The California Supreme Court found the same lack of demonstrable foundation that our supreme court found objectionable in *Miller* v. *State, supra*. We have reviewed a number of cases involving this situation, including *State* v. *Carlson*, 267 N.W.2d 170 (Minn. 1978), which holds that the psychological impact of mathematical probabilities upon the jury makes it inadmissible in every case. However, we believe that the better-reasoned cases hold to the contrary, *i.e.*, where the proper foundation has been laid and undue prejudice does not result, expert testimony of this nature may be admitted. Here, we cannot conclude that a proper foundation was not laid or that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

Appellant next contends that the trial court abused its discretion in holding that Bauer was qualified to testify as an expert witness. We do not agree.

Rule 702 of the Arkansas Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Whether a witness may give expert testimony rests largely within the sound discretion of the trial court, and its determination will

not be reversed unless that discretion is abused. There is a decided tendency to permit the finder-of-fact to hear testimony of persons having superior knowledge in a given field, unless clearly lacking in training or experience. *Dildine* v. *Clark Equipment Company*, 282 Ark. 130, 666 S.W.2d 692 (1984); *Killian* v. *Hill*, 32 Ark. App. 25, 795 S.W.2d 369 (1990). If there is a reasonable basis for saying a person knows more about the subject at hand than a person of ordinary knowledge, his evidence is admissible. *Killian* v. *Hill*, *supra*.

Here, Bauer testified that he had been engaged in the automotive industry for over eighteen years. During that period, he had worked as both a mechanic and parts manager. He was a high school graduate and had attended five schools dealing with Mazda parts and over twenty schools for mechanics. While a mechanic, he had worked on several thousand automobiles, using both new and used parts. During the past year, he had purchased parts for Mazda automobiles over one hundred times.

Bauer stated that he was familiar with the keys for Mazda cars and how they were made, and that he had experience in duplicating them. He testified that Curtis Industries made key-cutters for most of the after-market keys for all major automobile manufacturers, including Mazda. A security code book is used in connection with the key-cutter, in which the manufacturer includes a code for its keys. He stated that Mazda utilized only 7500 different "cuts" in its 1988-1989 cars, and used a code of "00 to 7500" in order to determine which keys might fit which automobiles. He testified that some of his knowledge came from trade journals, some from the Curtis Industries code books, and some from his own experience at the Mazda agency in Little Rock.

■ We cannot conclude that this witness lacked the training, skill, and experience that would give him a superior knowledge of matters about which he testified, or that he did not know more about the subject than persons of ordinary knowledge. *See Courteau* v. *Dodd*, 299 Ark. 380, 773 S.W.2d 436 (1989). The trial court did not abuse its discretion in permitting Bauer to testify as an expert.

 Nor do we find merit in the argument that his statements were inadmissible as based on hearsay because he had read similar information in trade magazines. An expert may base an opinion on what he learns from others, despite it being hearsay, so long as the sources are of a type reasonably relied on by experts in a particular field. *See Killian* v. *Hill, supra*; Ark. R. Evid. 703. The Curtis key codes were said to be relied upon by persons skilled or having responsibility for duplicating keys for many different makes of cars, and there is no indication that trade magazines subscribed to by persons in a particular trade are less than reliable. In addition, it is to be noted that Bauer relied upon his own calculations in confirming the figures about which he had testified. The relative strength or weakness of the factual underpinnings of opinions of experts goes to the weight and credibility of the evidence and not to its admissibility. *Killian* v. *Hill, supra*; *Arkansas State Highway Commission* v. *Schell*, 13 Ark. App. 293, 683 S.W.2d 618 (1985).

Affirmed.

JENNINGS and ROGERS, JJ., agree.