Curtis M. BLOCKMAN *v.* STATE of Arkansas

CA CR 99-892                                    11 S.W.3d 562

Court of Appeals of Arkansas
Division IV

Opinion delivered February 23, 2000

*John H. Bradley*, Mississippi County Managing Public Defender, by: *Tom A. Bennett*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Curtis M. Blockman was convicted in a bench trial of possession of crack cocaine with intent to deliver, and he was sentenced as a habitual offender to 126 months in the Arkansas Department of Correction. On appeal, he argues that the evidence presented at trial was insufficient

to support his conviction because he rebutted the presumption that his possession of four grams of crack cocaine was with the intent to deliver, and the trial court erred in failing to suppress physical evidence because it was seized pursuant to an impermissible warrantless detention effected without reasonable suspicion of criminal activity and because the search that was conducted was more extensive in scope than is allowable under *Terry v. Ohio*, 392 U.S. 1 (1968) and Rule 3.4 of the Arkansas Rules of Criminal Procedure, and thus violated the Fourth Amendment. We affirm.

At Blockman's suppression hearing, Blytheville police officer David Flora testified that on August 27, 1998, he received a phone call from a confidential informant with whom he had worked in the past and who had supplied information that had led to felony arrests and convictions. Officer Flora stated that prior to this case, the informant had supplied information twenty-six times, and the information had proven to be accurate twenty-three times.

The informant told Officer Flora that while he was in the vicinity of Eighth and Ash Streets in Blytheville, he observed someone deliver crack cocaine to a black male, twenty-five or thirty years old, wearing a green shirt, brown corduroy shorts, a dark cap, and lots of jewelry. The informant believed the purchaser put the narcotics in his sock. The informant was not able to provide the name of the dealer.

Officer Flora testified that he was familiar with the area of Eighth and Ash Streets because he had participated in frequent narcotics arrests in an apartment in that area. According to Officer Flora, the area was well known to the Blytheville Police Department as a location for street sales of crack cocaine. Officer Flora instructed the police dispatcher to relay the information that he received from the informant to officers in the area.

Blytheville Patrolman Fred Friar testified that he received the dispatch and was told to go to the area of Eighth and Ash, and he arrived there about 5:00 p.m. Another policeman, Officer Randy Sipes, arrived about the same time. Officer Friar observed quite a few people sitting around a table in a side yard. They noticed a subject, who they later learned was Blockman, who matched the description and was wearing the same kind of clothing observed by the informant, so they approached and asked him his name.

Blockman refused to tell them, so they led him away from the crowd to a place around the side of the house. They again asked him his name, but he again refused to respond. The officers conducted a pat-down search for weapons; according to Officer Friar, the area was known for street sales of crack and he feared that Blockman might be armed.

Officer Friar noted that Blockman was wearing two pairs of shorts and suspected that Blockman could conceal a weapon in them. In the course of the search, Officer Friar felt a lump in the back pocket of the inside pair of shorts. He claimed that he squeezed it to make sure that it did not conceal a weapon. Officer Friar stated that the lump, which was about the size of a golf ball, felt rocky, "like there were pebbles in his pocket," and that he could hear "kind of a cellophane sound." He stated that he suspected that the lump was crack cocaine; nonetheless, he passed it up because they had been told that the narcotics might be in his socks. When he found nothing, he went back to the lump. Officer Friar stated that he asked Blockman if there was anything that he should know about, and when he did not respond, he pulled up Blockman's gym shorts revealing a cellophane bag containing a substance that he suspected was crack cocaine. He pulled out the package and found twenty-five individually wrapped rocks of what he suspected was crack cocaine. He then formally placed Blockman under arrest.

Officer Sipes confirmed that Eighth and Ash was a known drug-trafficking area, that Blockman matched the description that he had received in the dispatch, and when he and Officer Friar approached Blockman, he refused to give his name. He was talking to Blockman's companions during the search, however, and while he did observe part of the pat-down, he did not see Officer Friar seize the contraband.

Officer Flora stated that the bag containing the twenty-five off-white-colored rocks, weighing approximately four grams, was turned over to him, and he forwarded it to the State Crime Lab.

The trial judge denied Blockman's motion to suppress, finding that Officer Friar lawfully discovered the contraband by plain feel while conducting a frisk for weapons pursuant to Rule 3.4 of the Arkansas Rules of Criminal Procedure.

At trial the next day, Blockman stipulated that all the testimony presented in the suppression hearing could be adopted and made part of the State's case. Following testimony from Officer Flora regarding the chain of custody of the physical evidence, the State introduced the lab report from the State Crime Lab and rested. Blockman moved for a directed verdict, arguing that there was no evidence that he possessed the drugs with intent to deliver. The trial court denied the motion. After Blockman testified that he had a cocaine habit and purchased the drugs solely for his own personal use, that he smoked about an ounce of crack a week, that he had purchased the drugs the day before, and that he was arrested the moment the police came in contact with him, he renewed his motion to suppress and his directed-verdict motion. The trial court denied both motions and found him guilty.

Blockman first contends that the trial court erred in finding that there was sufficient evidence to find him guilty of possession of crack cocaine with intent to deliver. He acknowledges that pursuant to Ark. Code Ann. § 5-64-401 (d) (Repl. 1997), possession of more than one gram of cocaine creates a rebuttable presumption that the possession was with intent to deliver. However, he argues that his testimony that he had a cocaine problem and that the drugs were for his own personal use, in the absence of contradictory testimony presented by the State, was sufficient to rebut the presumption. This argument is without merit.

Directed-verdict motions are treated as challenges to the sufficiency of the evidence. *Bennet v. State*, 308 Ark. 393, 825 S.W.2d 560 (1992). Where the sufficiency of the evidence is challenged, the reviewing court considers only that evidence which supports the guilty verdict. *Stipes v. State*, 315 Ark. 719, 870 S.W.2d 388 (1994). The test is whether there is substantial evidence to support the verdict, and on appellate review, "it is only necessary for this court to ascertain that evidence which is most favorable to the [State]." *Jameson v. State*, 333 Ark. 128, 130, 970 S.W.2d 705 (1998). Substantial evidence is evidence of such certainty and precision as to compel a conclusion one way or another. *Jenkins v. State*, 60 Ark. App. 122, 959 S.W.2d 427 (1998).

While it is true that Blockman testified that the twenty-five individually packaged rocks of crack were for his own personal use, the trier of fact was not obligated to believe him. *See Hooper v.*

*State*, 257 Ark. 103, 514 S.W.2d 394 (1974). Furthermore, the fact that the rocks of cracks were individually wrapped has been held to be evidence of intent to deliver, even when the amount of the drugs was insufficient to trigger the statutory presumption. *See Hurvey v. State*, 298 Ark. 289, 766 S.W.2d 926 (1989). Accordingly, there is sufficient evidence to sustain Blockman's conviction.

Blockman next argues that the trial court erred in declining to suppress the physical evidence that was seized following his detention that was effected without reasonable suspicion of criminal activity. He contends that the crack should have been suppressed because the police officers' seizure of his person violated the limits for an investigatory stop prescribed by Rule 3.1 of the Arkansas Rules of Criminal Procedure. He asserts that the nature of his detention was virtually the same as if he had been arrested. Further, Blockman argues that the "bare allegation" of a confidential informant did not constitute reasonable suspicion. Citing *dicta* in *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998), he contends there is a "reliability problem" inherent in confidential informants. Blockman also states that the only other circumstance that the police relied upon was the fact that he was in a high-drug-trafficking area, which he claims this court rejected as a factor for finding reasonable suspicion in *Stewart v. State*, 59 Ark. App. 77, 953 S.W.2d 599 (1997)[1].

The State essentially concedes that the detention and search exceeded the scope of a *Terry* stop. However, it argues that the trial court's denial of the suppression motion should nonetheless be affirmed because the police had probable cause to arrest Blockman when they first made contact. The State's argument is persuasive.

When this court reviews a trial court's denial of a motion to suppress, it makes an independent determination based on the totality of the circumstances, but will only reverse if the trial court's decision was clearly against the preponderance of the evidence. *Hill v. State*, 64 Ark. App. 31, 977 S.W.2d 234 (1998). A law-enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that the person has committed a felony. Ark. R. Crim. P. 4.1(a)(i) (1999). Reasonable cause

---

[1] We note that the supreme court took this case on review and affirmed the court of appeals, but on a different basis. *Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998).

exists when "the facts and circumstances within the officers' collective knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant in a man of reasonable caution the belief that an offense has been committed by the person to be arrested." *Williams v. State*, 321 Ark. 344, 902 S.W.2d 767 (1995). Reasonable cause to arrest without a warrant does not require the degree of proof sufficient to sustain a conviction, and, in assessing the existence of reasonable cause, the appellate court's review is liberal rather than strict. *Hudson v. State*, 316 Ark. 360, 872 S.W.2d 68 (1994).

■ Here, a known informant of proven reliability gave a detailed description of a man who had taken possession of narcotics in an area that was well-known for drug trafficking. When the police went to the location supplied by the informant, the information was confirmed. This gave Officer Friar probable cause to arrest Blockman. *See Johnson v. State*, 21 Ark. App. 211, 730 S.W.2d 517 (1987)(holding that police had probable cause to arrest based on similar information provided by an informant who had given police information on five prior occasions). Because Officer Friar had the authority to arrest Blockman, he also had the authority to conduct a search incident to that arrest. *See* Ark. R. Crim. P. 12.1 (1999). The fact that the search may have preceded the formal arrest is of no moment; such a search is valid even if conducted before the arrest, if the arrest and the search are substantially contemporaneous and probable cause to arrest existed prior to the search. *See Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997).

Blockman also argues that the trial court erred in declining to suppress the physical evidence seized during a search of his person that violated his Fourth Amendment rights. Noting that Rule 3.4 of the Arkansas Rules of Criminal Procedure is the Arkansas standard for the application of the rule announced in *Terry v. Ohio*, 392 U.S. 1 (1968), he contends that the so-called pat-down search was more intrusive than necessary to insure the officers' safety. Again, citing *Stewart v. State, supra*, he asserts that the fact that the officers suspected that he may have had drugs did not justify a search that was more intrusive than was allowed by *Terry v. Ohio*. Further, Blockman cites *Minnesota v. Dickerson*, 508 U.S. 366 (1993), a case in which the Supreme Court held that police officers may lawfully seize nonthreatening contraband discovered during a protective pat-down search, but only so long as the police did not exceed the

bounds specified by *Terry v. Ohio*, and argues that his search went beyond a pat-down of his outer clothing because during the search, the officers reached into his underwear. Moreover, he asserts that the officers knew that the lump was not a weapon, and only after manipulating the lump, which he knew was not a weapon, was the officer able to suspect that it was crack cocaine. Blockman contends that the *Terry* frisk was nothing more than a pretext for finding the drugs that the police were looking for.

██ ██ This argument, which dovetails closely with the argument under Point II, must also fail for the same reason; because the officers had probable cause to arrest Blockman, they also had the authority to conduct a search incident to arrest, which is permissibly more intrusive than a *Terry* frisk. Although the trial court found that the officers lawfully discovered the crack by plain feel while conducting a pat-down for weapons, as the State correctly points out, this court may affirm the result reached by the trial court if it is correct, even though the reason given by the trial court may have been different. *Ramage v. State*, 61 Ark. App. 174, 966 S.W.2d 267 (1998).

Affirmed.

ROBBINS, C.J., and STROUD, J., agree.