Rosetta Marie E. DAVIS *v*. STATE of Arkansas

CA CR 01-509                                            72 S.W.3d 121

Court of Appeals of Arkansas
Divisions IV and I
Opinion delivered April 10, 2002

*Alvin Schay*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. Appellant Rosetta Davis was convicted of aggravated robbery by a jury in Independence County Circuit Court. She was sentenced to twenty-three

years in the Arkansas Department of Correction to be served consecutively with a sentence she was already serving. On appeal, appellant argues that the trial court committed reversible error by failing to grant her motions for directed verdict. We affirm.

The facts giving rise to appellant's conviction are as follows. On the evening of September 8, 1999, Tammy Sue Mansfield was working as a cashier at Dugger's Grocery Store. That night, she worked alone from 6:00 until closing at 9:00. Between 9:15 and 9:30, Ms. Mansfield set the alarm, locked the door, and walked to her vehicle. Ms. Mansfield testified that at that point, a man wearing a mask and camouflage clothing and carrying a gun appeared in front of the car. She testified that the gun was approximately a foot long. The man carrying the gun was later determined to be Doug Looney. He pointed the gun at her and forced her out of the vehicle. The two struggled, and Ms. Mansfield pulled off his mask, only seeing the back of his head. The man grabbed her purse and ran. Ms. Mansfield testified that the man hit her in the head three times during the scuffle.

Testimony showed that earlier in the evening, appellant and Looney visited Anita and Tim Ferrier. Anita testified that while Looney was visiting her home, he was wearing jeans and a t-shirt not camouflage clothing. She also stated that there was no evidence of a gun on Looney's person that night. Anita further testified that although she did not know exactly what time appellant and Looney left her house, she estimated that it was around 9:30. Tim testified that Looney was wearing jeans and a t-shirt that night, and that the house was about six miles from Dugger's Grocery. Testimony from Sergeant Jonathon Deeter also showed that when he arrived on the scene at Dugger's store, Lieutenant Ferguson asked him to check the highway for anyone that might be walking along the road. As he was doing so, he saw a parked car on a dirt road off the highway without its lights or engine on; the dirt road where the car was parked was approximately 100 or 200 yards from the store. When he approached the car, appellant was sitting alone inside the car. When the officers asked her what she was doing, she told them that she was turning around. She also stated that she had just left a friend's house. Officer Huss testified that appellant was given her *Miranda* warnings, and she agreed to

talk to the officer. She told Officer Huss that she was out driving that evening and she was just taking a break. When initially asked if she had been with anyone that evening, she told them no. She admitted to going to the Ferrier's home earlier that evening to get some money that someone owed her, and she told the officer that she had not seen Looney since last summer. However, she later stated that Looney had accompanied her to the Ferrier's home that evening. She also agreed to let the officers search the car. The officers found men's clothing and a bank statement with Looney's name on it. She stated that she had dropped off Looney along a highway earlier that evening.

Deputy Price testified that his police dog traced a scent from the store to along the driver's side door where appellant was found. However, the dog went from near the driver's side door, back into a dry creek bed, and then off into a wooded area. Deputy Price stated that other officers were near the car and the trail could have been contaminated.

At the close of the State's case, appellant moved for a directed verdict arguing that the State had failed to provide any evidence that there was an agreement showing assistance or that she had aided or abetted in the commission of the crime. Appellant also moved for a directed verdict arguing that there was a lack of evidence connecting her with the gun or that there was any agreement by her for the gun to be used. Appellant's counsel also made a motion for a directed verdict because she was denied the right to cross examine the co-defendant. The motions for directed verdict were denied. At the close of all the evidence, appellant's counsel renewed the motions for directed verdict, all were again denied. This appeal followed.

■■ Directed-verdict motions are treated as challenges to the sufficiency of the evidence. *Hutcherson v. State*, 74 Ark. App. 72, 47 S.W.3d 267 (2001) (citing *Blockman v. State*, 69 Ark. App. 192, 11 S.W.3d 562 (2000)). When the sufficiency of the evidence is challenged, the appellate court considers only evidence that supports the guilty verdict, and the test is whether there is substantial evidence to support the verdict. *Id.* Evidence, whether direct or circumstantial, is substantial if it is of sufficient

force that it would compel a conclusion one way or the other without recourse to speculation and conjecture. *Rose v. State*, 72 Ark. App. 175, 35 S.W.3d 365 (2000). This court will affirm if there is any substantial evidence to support the verdict. *Id.*

██ Appellant argues that the trial court committed reversible error by failing to grant her motions for directed verdict. Specifically, appellant argues that the State produced no evidence proving that she was an accomplice to the co-defendant, Doug Looney, who was convicted of aggravated robbery. Arkansas law states that an accomplice is one who, with the purpose of promoting or facilitating the commission of an offense, either solicits, advises, encourages, or coerces another person to commit the offense, aids, agrees to aid, or attempts to aid the other person in planning or committing the offense, or, having a legal duty to prevent the offense, fails to make a proper effort to prevent the commission of the offense. Ark. Code Ann. § 5-2-403 (Repl. 1997). One's status as an accomplice ordinarily is a mixed question of law and fact. *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). Further, the presence of an accused in the proximity of a crime, opportunity, and association with a person involved in the crime in a manner suggestive of joint participation are relevant factors in determining the connection of an accomplice with the crime. *Harrell v. State*, 331 Ark. 232, 962 S.W.2d 325 (1998).

██ In this case, the evidence showed that when police approached the car and found appellant, she was unable to explain why she was sitting in the parked car, on a dark dirt road, within walking distance of Dugger's Store, without the car lights on or the engine running. Moreover, there was evidence that appellant failed to tell the truth about having not seen Looney since last summer when she was questioned by police officers, as there was testimony placing the two together at the Ferrier's home earlier that evening. Upon appellant's consent to search the car, the officers found men's clothing, from which the jury could infer that Looney changed from his jeans and t-shirt into the camouflage clothing in the car before the robbery, and a bank statement with Looney's name on it. The police dog traced a scent from

Dugger's Store to near the driver's side door of the car where appellant was found. Furthermore, the victim testified that during the robbery Looney was carrying a gun that was approximately a foot long. There was no evidence of a gun when Looney was seen earlier in the evening; thus, the inference was created that when he left the car to commit the robbery he took the gun from inside the car. Moreover, the jury could have infered that appellant was aware that Looney took the gun with him to commit the robbery. Our supreme court has stated that the jury is not required to lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct. *See Branscum v. State*, 345 Ark. 21, 43 S.W.3d 148 (2001). Likewise, circumstantial evidence can provide the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Smith v. State*, 346 Ark. 48, 55 S.W.3d 251 (2001). Here the evidence supports the inference that appellant was Looney's accomplice to the aggravated robbery. Clearly, the jury could conclude from the facts in evidence that Looney was in possession of a firearm when he left the vehicle to conduct the robbery and that appellant knew his purpose and was awaiting his return when she was approached by police officers. Thus, we hold that there was sufficient evidence to convict appellant of aggravated robbery.

ROBBINS, BIRD, GRIFFEN, CRABTREE, and ROAF, JJ., agree.