Eddie EWINGS *v.* STATE of Arkansas

CA CR 03-440                                    155 S.W.3d 715

Court of Appeals of Arkansas
Division IV
Opinion delivered March 24, 2004

[Rehearing denied April 21, 2004.]

*William R. Simpson, Jr.*, Public Defender; *Sharon Kiel*, Deputy Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. Appellant Eddie Ewings was tried before a jury and was convicted of possession of cocaine with intent to deliver. The trial court sentenced him to twenty years' imprisonment in the Arkansas Department of Correction rather than follow the jury's recommendation that he serve only three years' probation and 120 days' incarceration in the county jail. Ewings raises two points on appeal. He contends that the trial court erred in denying his directed-verdict motion because there was not substantial evidence that he had knowledge of the presence of cocaine in a backpack over which "he briefly exercised control." He also contends that the trial court erred in sentencing him to the term of imprisonment rather than following the jury's recommendation.

### Sufficiency of the Evidence

Ewings moved for a directed verdict at the completion of the State's case-in-chief and, without presenting a case for the defense, renewed his motion at the close of all the evidence. One basis of his motion was that the State had failed to prove Ewings's knowledge that there was cocaine in the backpack.

■ ■ We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Boston v. State*, 69 Ark. App. 155, 12 S.W.3d 245 (2000). When reviewing a denial of a directed verdict, we look at the evidence in the light most favorable to the State, considering only the evidence that supports the judgment or verdict. *Id.* We will affirm if there is substantial evidence to support a verdict. *Id.*

Detectives Kyle King and Mark Treece of the Little Rock Police Department testified that on the morning of May 7, 2001, they were working at the Greyhound bus station with the special narcotics operations unit. King, dressed in plain clothes, watched Ewings and other passengers get off a bus from Dallas. He observed the passengers' reactions to the presence of Treece and his German Shepherd, Rexy, as the canine sniffed the open luggage compartment of the bus. King saw that Ewings, who had stepped off the bus ready to light a cigarette, turned around within seconds of seeing the dog and passed disembarking passengers to get back inside the bus. Because of this unusual reaction, King boarded the bus behind Ewings. King observed Ewings take a seat on the passenger side immediately behind a seat with a Bugs Bunny backpack in it. After intently watching the dog through the window, Ewings got up and moved the backpack from the seat

into an overhead luggage compartment just above it. Ewings then sat in a seat beside a female on the driver's side of the bus.

After King identified himself as a police officer who worked at the bus station, Ewings agreed to speak with him. Ewings, who was extremely nervous, managed to produce a bus ticket showing that he was traveling from Laredo, Texas, to Brinkley, Arkansas; written on the ticket were the name Jason Simmons and a phone number. King asked Ewings where he lived and why he was traveling to Brinkley. Ewings told King his name but said that he did not have any identification; he said that he lived in Laredo and was traveling to Brinkley to visit family. King asked if Ewings had any drugs and asked for permission to search the bag that he had moved. Ewings said that he had no drugs, that the bag was not his, and that he was just moving it out of his seat. Ewings said that King could search the bag, which King did. Inside the bag were adult clothing and a bundle of off-white powder wrapped in plastic and clear tape. The bundle was later determined to contain 296.9 grams of cocaine hydrochloride cut with caffeine.

King field tested the powder, arrested Ewings, and took him inside an office in the bus station to be interviewed by Detective Treece. Ewings, waiving his *Miranda* rights, told the detectives that he had been approached by a person called "Hightop" to transport dope from Dallas to Brinkley or Augusta, Arkansas, for $450; and that Hightop had wired him $250 and a bus ticket for travel from Laredo to Brinkley. Ewings stated that Hightop had met him in Dallas and had ridden with him to Little Rock, telling Ewings to hang on to the backpack because Hightop had "some big weed" under the bus. Ewings stated that he and Hightop sat across the aisle from one another; that at first the bag was on the seat beside Hightop; but that when they arrived in Little Rock, Hightop said that he was going in to call somebody and that Ewings should make sure to "put the bag on the top." At one point, Ewings told the detectives, "Man, I could help you guys in Laredo." He told them that Hightop, who was Jason Simmons, had come to Laredo to get the dope and that Ewings "hooked him up" with another person, whom Ewings did not identify.

The information provided by Ewings turned out not to be useful. The detectives found no one getting off the bus in Brinkley and did not find a Jason Simmons on the bus, although such a person was located in Augusta. Rexy did not alert on anything in the large compartments of the bus.

Evidence is substantial if it is forceful enough to compel a conclusion one way or another beyond suspicion and conjecture. *Hall v. State*, 315 Ark. 385, 868 S.W.2d 453 (1993). Where the evidence is circumstantial, the appellate court must consider whether the evidence was sufficient to exclude all other reasonable hypotheses; whether circumstantial evidence excludes every other reasonable hypothesis is usually a question for the jury, and it is only when the evidence leaves the jury solely to speculation or conjecture that it is insufficient as a matter of law. *Boston v. State, supra; Duncan v. State*, 38 Ark. App. 47, 828 S.W.2d 847 (1992). In order to prove constructive possession, the State must establish beyond a reasonable doubt 1) that the defendant exercised care, control, and management over the contraband, and 2) that he knew that the matter possessed was contraband. *Id.* Conduct that may be sufficient to demonstrate control of a container may not be sufficient to demonstrate knowledge of the container's contents. *See id.* A jury may consider and give weight to any false, improbable, and contradictory statements made by the defendant to explain suspicious circumstances. *Atkins v. State*, 63 Ark. App. 203, 979 S.W.2d 903 (1998).

In the present case, Ewings contends that the jury had to resort to speculation and conjecture to conclude that he knew there was cocaine in the backpack over which he briefly exercised control. He argues that this case involves an allegation of constructive possession of contraband by a passenger on a Greyhound bus, and that no additional factor linked him to the contraband, as is required in joint occupancy of automobiles.

We hold that the evidence in this case, even if analyzed as a joint-occupancy case, is sufficient to sustain a finding that Ewings controlled or had the right to control the cocaine and that he had knowledge that it was cocaine. Ewings immediately went back inside the bus when he saw the drug dog sniffing the luggage compartment. After intently watching the dog from inside the bus, he moved the backpack into the overhead compartment and took a seat on the other side of the aisle. When approached by Detective King, Ewings was nervous and claimed that the bag was not his. He gave contradictory explanations about his trip and the bag, including the story that Hightop had paid him to transport "the dope" from Laredo to Arkansas. The trial court did not err by denying his motions for a directed verdict.

*Sentence*

After returning a verdict of "guilty" on the charge of possession of cocaine with intent to deliver, the jury was given two verdict forms to consider in the sentencing phase of the trial. The first was a form to fix a sentence of twenty to forty years' imprisonment or life in the Arkansas Department of Correction, and the second was for alternative sanctions. The trial court did not instruct the jury that the alternative sanctions were only a recommendation that the court was not bound to follow. The jury returned to the courtroom with nothing written on the form for imprisonment, but with the form for alternative sanctions filled out as follows:

1. A term of *3* years supervised probation.

2. A term of *120 days* (not more than 120 days) in the Pulaski County Jail.

3. A fine of *zero* (not to exceed $100,000) dollars.

When the trial court announced that it would not follow the jury's recommendation, defense counsel stated, "Your Honor, if the Court is not inclined to accept the alternative sentencing, we hope that the Court would consider suspending any amount of time if it's considering twenty or above." The court, expressing its understanding that it was not bound by the jury's recommendation, then sentenced Ewings to twenty years' imprisonment. Ewings argues that his sentence is illegal and therefore can be raised on appeal even though he did not object to it at trial. We do not agree.

▉▉ An illegal sentence that can be challenged for the first time on appeal is one that is illegal on its face. *E.g. Cooley v. State*, 322 Ark. 348, 909 S.W.2d 312 (1995). The twenty-year sentence Ewings received is the minimum sentence allowed under Ark. Code Ann. § 5-64-401(a)(1) (Supp. 1999), which specifies twenty to forty years' imprisonment or life for a person convicted of possessing between 200 and 400 grams of a Schedule II controlled substance. Because the power to sentence Ewings to twenty years' imprisonment was clearly prescribed by law, the sentence is not illegal on its face and cannot be raised for the first time on appeal. *See id.; Cooley v. State, supra.*

We would also affirm were we to consider the merits of this second point. The role of jury and court in bifurcated sentencing

procedures are governed by Ark. Code Ann. § 5-4-103 (Repl. 1997), which states that a jury that has found a defendant guilty of a felony offense shall fix punishment in a separate proceeding. Arkansas Code Annotated section 16-97-101 (Supp. 1999) further specifies these procedures:

> (2) If the defendant is found guilty of one (1) or more charges, the jury shall then hear additional evidence relevant to sentencing on those charges. Evidence introduced in the guilt phase may be considered, but need not be reintroduced at the sentencing phase.
>
> (3) Following the introduction of additional evidence relevant to sentencing, if any, instruction on the law, and argument, *the jury shall* again retire and *determine a sentence within the statutory range.*
>
> (4) The court, in its discretion, may also instruct the jury that counsel may argue as to alternative sentences for which the defendant may qualify. *The jury, in its discretion, may make a recommendation as to an alternative sentence. However, this recommendation shall not be binding on the court.*

(Emphasis added.) Additionally, Ark. Code Ann. § 16-90-107(a) (1987) states that if a jury "assesses a punishment not authorized by law, . . . the court shall assess and declare the punishment and render judgment accordingly."

Only a trial court, not a jury, can suspend a sentence; and a criminal defendant has no right to a suspended sentence. *Dale v. State*, 55 Ark. App. 184, 935 S.W.2d 274 (1996); *Bing v. State*, 23 Ark. App. 19, 740 S.W.2d 156 (1987). In *Slaughter v. State*, 69 Ark. App. 65, 12 S.W.3d 240 (2000), we recognized the authority of a trial court under sections 16-90-107(a) and 5-4-103, when read in conjunction, to take the sentencing function away from the jury when it assesses an unauthorized punishment. Here, the jury's recommendation of three years' probation and 120 days' incarceration in the county jail clearly was not an authorized sentence for an offense requiring a minimum of twenty years' imprisonment.

We distinguish *Richards v. State*, 309 Ark. 133, 827 S.W.2d 155 (1992), which Ewings cites as authority for reversal. The jury in *Richards* rendered a sentence of forty years and a fine for delivery of cocaine, a sentence that was within the statutory range for the crime, but the trial court increased the term of imprisonment and reduced the fine. The supreme court held that although

the trial court had authority to reduce the fine, it had exceeded its authority in increasing the term of imprisonment beyond the authorized sentence assigned by the jury. Here, however, the jury merely recommended a sentence that the trial court was not obligated to follow.

Affirmed.

PITTMAN and ROBBINS, JJ., agree.