2012 Ark. App. 274

**Dewayne BOYKIN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–936.**

Court of Appeals of Arkansas.

April 18, 2012.

Gregory Crain, Malvern, Attorney for Appellant.

Dustin McDaniel, Attorney General, Ashley Argo Priest, Assistant Attorney General, Little Rock, Attorneys for Appellee.

DOUG MARTIN, Judge.

A Hot Spring County jury found appellant Dewayne Boykin guilty of possession of cocaine and simultaneous possession of drugs and firearms. He was sentenced as a habitual offender to twenty years' imprisonment on the conviction for possession of cocaine and sixty years' imprisonment on the drugs-and-firearms conviction, with those sentences running consecutively. Boykin argues on appeal that the trial court erred in denying his directed-verdict motions and motion to suppress evidence seized during a search of his vehicle. We affirm.

At approximately 5:00 a.m., on April 7, 2011, Kenny Henson, who worked with loss prevention at Walmart, observed a vehicle on video surveillance pulling into the store's parking lot. Boykin emerged from the driver's seat and went inside the store. Henson continued to watch Boykin once he was inside Walmart over the course of approximately two hours. Boykin went to the electronics department, kneeled down in front of a case containing iPods and iPads, and began prying open the glass doors of the case with a screwdriver. Henson stated that Boykin worked on opening the case for a while and then went to the main aisle and appeared to be "watching for folks." Henson contacted the Malvern Police Department.

Officers Joseph Paull and Chris Coke with the Malvern Police Department were

dispatched to Walmart. Henson gave the officers a description of Boykin and his clothing and told the officers that Boykin was in the electronics section near the iPod-iPad case. In an aisle near the electronics department, Paull saw a screwdriver with a black-and-blue handle on the floor. There was no one at the iPod-iPad case when the officers reached the electronics department, but Paull observed two shopping carts in the area full of miscellaneous merchandise. Paull and Coke returned to the front of the store where they met Henson who advised that Boykin had just fled from the store. The officers saw Boykin running toward a sport utility vehicle (SUV) parked at the Murphy USA gas station located adjacent to Walmart's parking lot.

Paull and Coke got into their patrol cars and blocked the SUV from leaving the gas station. Boykin was standing at the rear of the SUV near the passenger's side, holding a set of keys in his hand. The officers asked Boykin whether the SUV belonged to him, and Boykin stated that he owned the vehicle. The officers then arrested Boykin and conducted an inventory of the SUV's contents. Paull and Coke later testified that it was police policy, upon the arrest of a suspect, to inventory a vehicle's contents prior to towing it.

Inside the SUV's glove compartment, the officers found the registration to the SUV, confirming that Boykin was in fact the owner. Officers also found a loaded handgun in a pocket behind the passenger's seat. Paull later testified that the driver of the SUV could "definitely" reach the handgun. Officer Coke found a small baggie containing six or seven rocks of what appeared to be crack cocaine. At trial, Stacy Winkler, a forensic chemist at the Arkansas State Crime Lab, confirmed that the substance was 1.0684 grams of cocaine base. The baggie was located inside a spiral notebook found in a pocket below the radio on the driver's side of the console. Coke later testified that the cocaine was level with the driver's knee. In the SUV's rear compartment, officers found several miscellaneous tools, including small screwdrivers, wire snips, and pliers. Paull later testified that the screwdrivers in Boykin's vehicle matched the one that Paull had observed in the aisle at Walmart.

After the inventory, Paull and Coke returned to Walmart where they viewed the surveillance video. The officers observed Boykin's vehicle in the Walmart parking lot and saw that someone was sitting in the passenger's seat. The officers then observed a person crawling from the back seat into the driver's seat. That person then drove the SUV to the Murphy USA gas station. Coke recalled that, when he and Paull arrested Boykin, there were two men standing approximately thirty to forty feet away near the gas pumps and that, at the time, he did not think the men were involved.

Photographs introduced into evidence at Boykin's trial depicted scratches on the iPod-iPad case, which Paull testified appeared to have been caused by prying the end of the case's glass doors. At trial, Henson testified that, ultimately, nothing was stolen from Walmart.

I. *Sufficiency of the Evidence*

We first consider Boykin's argument challenging the sufficiency of the evidence in order to preserve his right to freedom from double jeopardy. *Malone v. State*, 364 Ark. 256, 217 S.W.3d 810 (2005). In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *McKenzie v. State*, 362 Ark. 257, 208 S.W.3d 173 (2005). Substantial evidence is evidence of

sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resort to speculation or conjecture. *Fultz v. State,* 333 Ark. 586, 972 S.W.2d 222 (1998). Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* The question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Ross v. State,* 346 Ark. 225, 57 S.W.3d 152 (2001). It is only when the evidence leaves the jury solely to speculation or conjecture that it is insufficient as a matter of law. *Boston v. State,* 69 Ark.App. 155, 12 S.W.3d 245 (2000). We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Paschal v. State,* 2012 Ark. 127, 388 S.W.3d 429.

Arkansas Code Annotated section 5–64–401(c) provides that it is unlawful for any person to possess a controlled substance. Ark.Code Ann. § 5–64–401(c) (Repl.2005). It is not necessary for the State to prove literal physical possession of drugs in order to prove possession. *Mings v. State,* 318 Ark. 201, 884 S.W.2d 596 (1994). Possession of drugs can be proved by constructive possession. *Dodson v. State,* 341 Ark. 41, 14 S.W.3d 489 (2000). In order to prove constructive possession, the State must establish beyond a reasonable doubt (1) that the defendant exercised care, control, and management over the contraband, and (2) that the defendant knew that the matter possessed was contraband. *Ewings v. State,* 85 Ark.App. 411, 155 S.W.3d 715 (2004).

We note that no one actually occupied Boykin's SUV at the time of his arrest. The State maintains that the joint-occupancy analysis is inapplicable; however, even if we were to apply the joint-occupan-

cy analysis, the result would be the same. Although constructive possession can be implied when the drugs are in the joint control of the accused and another, joint occupancy of a vehicle, standing alone, is not sufficient to establish possession or joint possession. *Dodson, supra.* There must be some other factor linking the accused to the drugs, such as (1) whether the contraband is in plain view; (2) whether the contraband is found with the accused's personal effects; (3) whether it is found on the same side of the car seat as the accused was sitting or in near proximity to it; (4) whether the accused is the owner of the automobile, or exercises dominion or control over it; and (5) whether the accused acted suspiciously before or during the arrest. *Id.*

Boykin argues that there was no evidence that he actually or constructively possessed the cocaine. We disagree with Boykin's assertion and hold that, even analyzing this case as one of joint occupancy, the State proved that Boykin constructively possessed the cocaine. Boykin owned the SUV, as indicated by his own admission and the vehicle's registration, and Boykin otherwise exercised dominion and control over the vehicle, given that he was holding the keys to the vehicle in his hand at the time of his arrest. Also, the surveillance video revealed that Boykin drove the SUV to Walmart. The cocaine was found at a location that was level with the driver's knee, and therefore Boykin was in close proximity to the drugs. Further, Boykin acted suspiciously before his arrest in that he attempted to steal expensive electronics from Walmart, and, shortly after the police arrived, was seen running through the parking lot toward his vehicle. Clearly, several factors link Boykin to the cocaine.

Although Boykin points to testimony that two other people were seen inside his

vehicle, suggesting that the contraband belonged to them, we do not consider evidence that does not support the verdict. *Paschal, supra.* The jury obviously found that the circumstantial evidence in this case excluded the possibility that the cocaine belonged solely to the other two men, and our review indicates that the jury could have made such determination without resorting to speculation or conjecture. *See Flowers v. State,* 373 Ark. 127, 282 S.W.3d 767 (2008). Further, in light of the foregoing evidence, the jury could reasonably conclude that Boykin had knowledge of the cocaine and exercised care, control, and management of the cocaine. Boykin's conviction for possession of cocaine is supported by substantial evidence, and therefore we affirm on this point.

■ Next, Boykin challenges his conviction for simultaneous possession of drugs and firearms. Arkansas Code Annotated section 5–74–106(a)(1) provides that no person shall unlawfully commit a felony violation of section 5–64–401 or unlawfully attempt, solicit, or conspire to commit a felony violation of section 5–64–401 while in possession of a firearm. Ark. Code Ann. § 5–74–106(a)(1) (Repl.2005). The finder of fact need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct. *Holt v. State,* 2009 Ark. 482, 348 S.W.3d 562.

Boykin asserts that "[n]othing has linked Mr. Boykin to the gun," arguing that the State failed to collect fingerprints from the handgun or check the handgun's registration. While Paull testified that the handgun was sent to the lab for testing, he had no knowledge of the results. Paull further testified that the handgun's registration was checked and that, if the handgun had been registered to someone other than Boykin, it would have been noted in

Paull's report. In any event, Boykin ignores the fact that the handgun was located inside his vehicle. Boykin also argues that the State did not prove that he "possessed the firearm or weapon while committing, attempting to commit, solicited the commission of or conspiring to commit possession of cocaine with intent to deliver or possession of cocaine." Boykin overlooks the fact that the statute is divided by the word "or" and that a plain reading of the statute prohibits a person from unlawfully committing a felony in violation of section 5–64–401, which includes Boykin's possession of cocaine, while in possession of a firearm. As established earlier, Boykin constructively possessed the cocaine, and he did so while in possession of a firearm. Therefore, his conviction for simultaneous possession of drugs and firearms is affirmed.

II. *Suppression of the Evidence*

■ When a trial court's denial of a motion to suppress is challenged, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State,* 351 Ark. 406, 94 S.W.3d 892 (2003).

■ Arkansas Rule of Criminal Procedure 4.1 provides that a law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed a felony. Ark. R.Crim. P. 4.1(a)(i). Reasonable cause exists when "the facts and circumstances within the officers' collective knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution the belief that an offense has been committed by the person to

be arrested." *Franklin v. State*, 2010 Ark. App. 792, 378 S.W.3d 296 (quoting *Blockman v. State*, 69 Ark.App. 192, 197–98, 11 S.W.3d 562, 566 (2000)). Reasonable cause to arrest without a warrant requires less proof than that required to sustain a conviction, and this court's review of the existence of reasonable cause is liberal rather than strict. *Id.* At the time of Boykin's arrest, theft of property was a Class C felony if the value of the property was less than $2,500 but more than $500. Ark. Code Ann. § 5–36–103(b)(2) (Repl.2006). Moreover, criminal attempt was a Class D felony if the offense attempted was a Class C felony. Ark.Code Ann. § 5–3–203(5) (Repl.2006).

Boykin argues that his motion to suppress should have been granted because there was no probable cause to arrest him in that there was "a mere suspicion" about what had occurred at Walmart and no crime was committed. Pursuant to Rule 4.1, the officers had authority to arrest Boykin without a warrant because the officers reasonably believed that Boykin had committed a felony. Based on the information provided by Henson and the officers' own observation of Boykin fleeing from the scene, the officers had reasonable cause to believe that Boykin had committed theft or attempted theft, both of which are felonies. We conclude that the officers had authority to arrest Boykin without a warrant.

Arkansas Rule of Criminal Procedure 12.6(b) provides that a vehicle impounded in consequence of an arrest may be searched at such times and to such extent as is reasonably necessary for safekeeping of the vehicle and its contents. It is well settled that police officers may conduct a warrantless inventory search of a vehicle that is being impounded in order to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger." *Thompson v. State*, 333 Ark. 92, 97, 966 S.W.2d 901, 904 (1998) (quoting *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987)). An inventory search, however, may not be used by the police as a guise for "general rummaging" for incriminating evidence. *Id.* Hence, the police may impound a vehicle and inventory its contents only if the actions are taken in good faith and in accordance with standard police procedures or policies. *Id.* These standard procedures do not have to be in writing, and they may be established by an officer's testimony during a suppression hearing. *Welch v. State*, 330 Ark. 158, 955 S.W.2d 181 (1997).

Boykin does not address the fact that the search of his vehicle was an inventory search, which is supported by our rules and case law. The officers testified that it was standard police policy to inventory the contents of any vehicle before having it towed. Boykin's vehicle was going to be towed upon Boykin's arrest. Nevertheless, Boykin asserts that there was no necessity shown for the search of his vehicle and that the search was conducted in bad faith. It was necessary for the officers to conduct an inventory search of Boykin's vehicle for the reasons set forth in *Thompson, supra,* and Boykin has pointed to no evidence of bad faith on the part of the police officers. The inventory search was proper upon Boykin's lawful arrest. We cannot say that the trial court's denial of Boykin's motion to suppress was clearly against the preponderance of the evidence, and thus we affirm the trial court's decision.

Affirmed.

GRUBER and ABRAMSON, JJ., agree.